[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 23, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11368

_____

D.C. Docket No. 06-00260-CV-T-24MSS

TERESA BASCO,
JOSEPH BASCO,
her husband,

Plaintiffs–Appellants,

versus

GIL MACHIN,
in his official capacity as Director of Section 8
Housing of Hillsborough County, Florida,
PATRICIA G. BEAN,
in her official capacity as Administrator of
Hillsborough County, Florida,

Defendants–Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 23, 2008)**

Before BIRCH and BARKETT, Circuit Judges, and KORMAN,[*] District Judge.

BARKETT, Circuit Judge:

Teresa and Joseph Basco appeal from summary judgment granted in favor of Gil Machin, Director of Section 8 Housing of Hillsborough County, Florida, and Patricia G. Bean, Administrator of Hillsborough County, Florida, on their complaint asserting violations of due process pursuant to 42 U.S.C. § 1983 when their housing subsidy was terminated for the presence of an "unauthorized resident."[1] We reverse.

## I. FACTS

Teresa Basco was a qualified participant in the Section 8 Program of her local public housing authority, the Health and Social Services Department of Hillsborough County, Florida ("PHA").[2] The PHA administers the Housing Choice Voucher rental-assistance program for the U.S. Department for Housing and Urban Development ("HUD"). That program provides monetary and rental assistance to lower-income families. As a Section 8 participant, Teresa Basco entered into a lease for a single-family residence in Tampa, Florida with her

_____

[*] Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

[1] Amicus Curiae The Housing Umbrella Group of Florida Legal Services has filed a brief in support of Appellants with the consent of both parties.

[2] For ease of reference, we include Appellees Machin and Bean in our use of "PHA."

mother and landlord, Donna VanDerLaan.[3]  In the lease, Ms. Basco indicated that only she, her husband, and five minor children would reside in the assisted unit. The PHA and VanDerLaan entered into a Housing Assistance Payments Contract ("HAP Contract"), which provided that the PHA would pay a specific amount each month to VanDerLaan on behalf of Ms. Basco.  The HAP Contract restricted the residents of the assisted unit to those listed in the lease.  In connection with receiving Section 8 assistance, Ms. Basco signed a form acknowledging that her benefits could be terminated for any violation of the terms of the HAP Contract, including allowing disturbances at her unit and failing to notify the PHA of any changes in family composition.

HUD regulations prohibit the presence of an unauthorized resident in assisted units, but do not prohibit a participant from having house guests.  See 24 C.F.R. § 982.551(h)(2).  At the relevant time, the PHA interpreted these regulations in its Administrative Plan for the 2004–2005 period by establishing particular rules regarding visitors:

> Any person not included on the HUD 50058 who has been in the unit more than 15 consecutive days without PHA approval, or a total of 30 days in a 12 month period, will be considered to be living in the unit as an unauthorized household member.

---

[3] VanDerLaan's name appears in the record as "Vanderlaan," "VanDerlaan," and "VanDerLaan."  As she is the mother of Ms. Basco, we assume that the Bascos' briefs use the correct spelling: VanDerLaan.

Absence of evidence of any other address will be considered verification that the visitor is a member of the household.

Statements from neighbors and/or the landlord will be considered in making the determination.

Use of the unit address as the visitor's current residence for any purpose that is not explicitly temporary shall be construed as permanent residence.

The burden of proof that the individual is a visitor rests on the family. In the absence of such proof the individual will be considered an unauthorized member of the household and the PHA will terminate assistance since prior approval was not requested for the addition.

In November 2005, an anonymous person who identified himself as a neighbor of Ms. Basco telephoned the PHA to provide information regarding disturbances at Ms. Basco's assisted unit, multiple police calls to the unit, and the arrest of a member of Ms. Basco's household. The PHA assigned the matter to Section 8 Housing Counselor Sarah J. Matalon, who obtained from the Tampa Police Department copies of two police reports involving Ms. Basco's assisted unit.

The first report, dated February 28, 2005, stated that Joseph Basco gave a sworn statement to the police indicating that his stepdaughter had run away with a man named "Emanuel Jones," "who's staying at the house." The alleged sworn statement was not contained in or attached to the report. The February report further noted that Mr. Basco said he called Emanuel's stepfather to come and

4

collect Emanuel's belongings. The report noted that Emanuel's address was the same as that of Ms. Basco's unit. The second report, dated July 18, 2005, listed "Elonzel Jones" as an eyewitness to an alleged battery on Mr. Basco by his stepdaughter, and listed Elonzel's address as that of the assisted unit.

Based on these two police reports, Section 8 Senior Housing Counselor Sherry Hanson sent Ms. Basco a Notice of Intent to Terminate along with copies of the reports. The termination notice advised Ms. Basco that the PHA intended to terminate her housing assistance based the presence of on an unauthorized resident in her unit in violation of 24 C.F.R. §§ 982.551 and .516. Although not expressly stated, the implication from the notice was that the PHA believed that Elonzel Jones and Emanuel Jones were the same person; that "Jones" had been living in Ms. Basco's assisted unit between February and July 2005; that this totaled more than fifteen days; and that Jones was therefore an "unauthorized resident." Indeed, in its brief on appeal, the PHA avers that the police reports "reflected Jones' address over a five month period."

In response to the termination notice, Ms. Basco requested a hearing. Section 8 participants are entitled to a "pretermination [of benefits] hearing" before an impartial Hearing Officer who is appointed by the Tampa Housing Authority, an entity distinct from the PHA. The PHA sent Ms. Basco a letter scheduling the

5

hearing and advising her of her rights and also provided her with copies of the February and July police reports.

At the hearing and on behalf of the PHA, Matalon presented, as the only evidence, copies of the February and July police reports she had obtained. In her defense, both Ms. Basco and her landlord testified that Jones did not live at the assisted unit. Ms. Basco also submitted a December 7, 2005 notarized letter from Jones's mother stating that Jones had only ever lived at two addresses, neither of which was Ms. Basco's. To rebut the alleged statement by Mr. Basco contained in the February 2005 police report, Ms. Basco asked to have her husband directly testify by telephone.[4] The Hearing Officer denied the request and upheld the PHA's decision to terminate Ms. Basco's benefits, stating:

> Mrs. Basco could not provide information regarding [the] unauthorized resident. Mr. Basco gave a statement to police that states that Mr. Jones stay [sic] in assist [sic] unit. Landlord who is also Mrs. Basco [sic] mother became upset and demand [sic] extra time to gather more information (records on Mr. Jones). Her request were [sic] denied. Decision is upheld.

The Bascos twice sought to have the Hearing Officer's decision overturned. They met with Gil Machin, the Acting Operations Manager of the PHA, and presented new evidence, including a January 10, 2006 notarized letter from Jones stating that he had only lived with his grandmother and mother, and that he had

___

[4] According to the Bascos, Mr. Basco was unable to attend the hearing because he had to care for the couple's disabled son at home.

6

never lived in Ms. Basco's unit. After reviewing the new evidence, Machin concluded that there was not a sufficient basis under HUD regulations to overturn the Hearing Officer's decision or to provide Ms. Basco with a new hearing. The Bascos also retained a legal services attorney, who again requested that Machin reject the decision of the Hearing Officer. After reviewing the file a second time, Machin again denied the request. In a letter to the Bascos' attorney, Machin cited the PHA's Administrative Plan provision stating that "[t]he burden of proof that the individual is a visitor rests on the family. In the absence of such proof the individual will be considered an unauthorized member of the household and the PHA will terminate assistance . . . ."

The Bascos then filed this suit, alleging deprivations of their right to procedural due process under 24 C.F.R. § 982.555(e)(5) and (6), and 42 U.S.C. § 1983. In particular, the Bascos asserted that the PHA denied them the opportunity to confront and cross-examine witnesses against them, and improperly placed the burden of proof on them rather than on the PHA, which sought to terminate their housing assistance.

The district court granted summary judgment in favor of the PHA, finding no violation of due process. We review the district court's grant of summary judgment de novo, applying the same legal standards as the district court. See,

7

e.g., Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

## II. DISCUSSION

The Bascos ask us to resolve two issues in appealing the district court's grant of summary judgment. We must first decide if the PHA or the Section 8 participant bears the burden of persuasion[5] in an administrative hearing held under HUD regulations to determine whether a participant's housing subsidy should be terminated. If the PHA bears that burden, we must then decide whether due process allows the burden to be met in this case by Matalon's submission of copies of the police reports.

HUD regulations establish the substantive rights at issue and the basic procedures to be followed in an informal Section 8 termination hearing, but do not expressly address which party bears the burden of persuasion at such a hearing.[6]

---

[5] A brief cautionary note on our terminology is warranted. The Supreme Court has recognized that the phrase "burden of proof" has a history of ambiguous usage despite the now-apparent consensus that it refers only to the burden of persuasion, and not to both the burdens of persuasion and production. Dir., Office of Workers' Comp. Programs v. Greenwich Collieries, 512 U.S. 267, 272–76 (1994). In this case, the PHA's Administrative Plan uses the phrase "burden of proof." To prevent confusion, we limit our use of that phrase to references to the Administrative Plan and otherwise refer to the "burden of persuasion."

[6] HUD regulations provide as follows with respect to the Section 8 termination hearing procedures:
    (e)     Hearing procedures—
          (1)     Administrative plan. The administrative plan must state the PHA procedures for conducting informal hearings for participants.
          (2)     Discovery—
               (i)     By family. The family must be given the opportunity to examine

See 24 C.F.R. § 982.555.  However, contrary to Machin's declaration that the

"burden of proof that the individual is a visitor rests on the family," and as the

PHA conceded at oral argument, the PHA has the burden of persuasion and must

initially present sufficient evidence to establish a prima facie case that an

unauthorized individual "has been in the unit more than 15 consecutive days

_____

before the PHA hearing any PHA documents that are directly relevant to the hearing.  The family must be allowed to copy any such document at the family's expense.  If the PHA does not make the document available for examination on request of the family, the PHA may not rely on the document at the hearing.

(ii)    By PHA.  The PHA hearing procedures may provide that the PHA must be given the opportunity to examine at PHA offices before the PHA hearing any family documents that are directly relevant to the hearing.  The PHA must be allowed to copy any such document at the PHA's expense.  If the family does not make the document available for examination on request of the PHA, the family may not rely on the document at the hearing.

(iii)   Documents.  The term "documents" includes records and regulations.

(3)     Representation of family.  At its own expense, the family may be represented by a lawyer or other representative.

(4)     Hearing officer: Appointment and authority.

(i)     The hearing may be conducted by any person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person.

(ii)    The person who conducts the hearing may regulate the conduct of the hearing in accordance with the PHA hearing procedures.

(5)     Evidence.  The PHA and the family must be given the opportunity to present evidence, and may question any witnesses.  Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings.

(6)     Issuance of decision.  The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision.  Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing.  A copy of the hearing decision shall be furnished promptly to the family.

24 C.F.R. § 982.555(e).

9

without PHA approval, or a total of 30 days in a 12 month period." Thereafter, the Section 8 participant has the burden of production to show "that the individual is a visitor."[7]

Thus, the question here is whether the Hearing Officer's determination that the PHA met its burden of persuasion through Matalon's submission of the unauthenticated copies of the two police reports comports with due process.

Although the rules of evidence are not strictly applied in administrative hearings, there are due process limits on the extent to which an adverse administrative determination may be based on hearsay evidence. As was held in U.S. Pipe and Foundry Company v. Webb, "hearsay may constitute substantial evidence in administrative proceedings as long as factors that assure the 'underlying reliability and probative value' of the evidence are present." 595 F.2d 264, 270 (5th Cir. 1979). The reliability and probative force of such evidence

---

[7] This reading of the Administrative Plan is consistent with Goldberg v. Kelly, wherein the Supreme Court held that the Due Process Clause of the U.S. Constitution requires that welfare recipients be afforded an evidentiary hearing with minimum procedural safeguards before their benefits may be terminated. 397 U.S. 254, 266 (1970). The Supreme Court reasoned that the interests of the recipient in the uninterrupted provision of benefits and of the State in not wrongly terminating benefits outweighed the State's competing interest in summary adjudication. Id. This reasoning applies with equal force to public housing assistance provided pursuant to Section 8, where eligible participants rely on subsidies to meet their basic need for housing. See Davis v. Mansfield Metro. Hous. Auth., 751 F.2d 180, 185 (6th Cir. 1984); Escalera v. N.Y. City Hous. Auth., 425 F.2d 853, 861 (2d Cir. 1970); see also Goldberg, 397 U.S. at 262 (citations omitted) ("Relevant constitutional restraints apply as much to the withdrawal of public assistance benefits as to disqualification for unemployment compensation; or to denial of a tax exemption; or to discharge from public employment.").

depend on "whether (1) the out-of-court declarant was not biased and had no interest in the result of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant; (3) the information was not inconsistent on its face; and (4) the information has been recognized by courts as inherently reliable." J.A.M. Builders, Inc. v. Herman, 233 F.3d 1350, 1354 (11th Cir. 2000) (citing U.S. Pipe & Foundry Co., 595 F.2d at 270 (citing Richardson v. Perales, 402 U.S. 389, 402–06 (1971))).

In Perales, the Court examined the admissibility of physicians' reports in a social security disability claim hearing and found that the reports were admissible despite their hearsay character and "may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant." 402 U.S. at 402. The dispute in Perales involved the physicians' diagnoses and medical conclusions, and the parties did not contest or dispute the underlying facts in the reports. Id. at 406–07. The Perales court was careful to note that it was applying a lesser standard than would apply to the consideration of hearsay in hearings initiated to terminate benefits, where the concerns of Goldberg might attach:

> The Perales proceeding is not the same. We are not concerned with termination of disability benefits once granted. Neither are we concerned with a change of status without notice. Notice was given to claimant Perales. The physicians' reports were on file and available

11

> for inspection by the claimant and his counsel. And the authors of those reports were known and were <u>subject to subpoena and to the very cross-examination</u> that the claimant asserts he has not enjoyed. Further, the specter of questionable credibility and veracity is not present; there is professional disagreement with the medical conclusions, to be sure, but there is no attack here upon the doctors' credibility or veracity. [<u>Goldberg v.</u>] <u>Kelly</u> affords little comfort to the claimant.

<u>Id.</u> (emphasis added). Ultimately, the Court rested its holding on its analysis of the four factors that we later enumerated in <u>J.A.M. Builders</u>. <u>Id.</u> at 402–06.

Initially, we need not consider the description, in the first police report, of Mr. Basco's alleged written statement.[8] The statement was not attached to the police report, and although it is not hearsay, <u>see</u> Fed. R. Evid. 801(d)(2)(A), it is insufficient alone to establish that Jones was an unauthorized resident. It merely establishes that Jones stayed with the Bascos, but it does not speak to the length of his stay, which, according to the PHA's Administrative Plan, must be at least fifteen consecutive days or thirty days in a twelve-month period in order for Jones to be an unauthorized resident.[9]

Therefore, we consider only the police reports as to the statements allegedly

---

[8] Although we need not decide whether it is independently problematic that the Hearing Officer appeared to rely upon the first police report's <u>description</u> of Mr. Basco's sworn statement, <u>see</u> Fed. R. Evid. 1002 ("[t]o prove the content of a writing, . . . the original writing . . . is required"), we are troubled by the PHA's failure to explain the absence from the police report of the actual statement.

[9] The Bascos have not challenged the PHA's interpretation of what constitutes an "unauthorized resident."

made to the police officers by Emanuel and Elonzel. The primary J.A.M. Builders factor that counsels against basing an adverse administrative determination on those hearsay statements is the second factor, as the Bascos could not subpoena the officers, Emanuel, or Elonzel for cross-examination. However, we need not decide whether that deficiency renders the Hearing Officer's reliance on the reports and the statements described therein a violation of due process. Even assuming arguendo that the reports and statements were properly admitted, they do not establish that Emanuel and Elonzel are the same individual and therefore, as with Mr. Basco's alleged statement, do not speak to the length of the stay at the Bascos' residence. Although the PHA argues that the two individuals are one and the same, absolutely no evidence substantiates that claim. Therefore, the police reports presented by the PHA were legally insufficient to establish a prima facie case that either Emanuel or Elonzel had resided at the Bascos' residence for fifteen consecutive days or for thirty days in a twelve-month period.

### III. CONCLUSION

We conclude that the PHA bears the burden of persuasion at an informal administrative hearing held pursuant to HUD regulations to determine whether a Section 8 participant's housing subsidy should be terminated. For the reasons expressed above, we further find that the Hearing Officer erred in this case in

13

relying upon legally insufficient evidence to terminate Ms. Basco's Section 8

assistance. Accordingly, we REVERSE the district court's grant of summary

judgment, and REMAND for further proceedings consistent with this opinion.

**REVERSED** and **REMANDED**.