[Cite as *Hammond v. Akron Metro. Hous. Auth.*, 2011-Ohio-2635.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

LISA HAMMOND

      Appellant

      v.

AKRON METROPOLITAN HOUSING
AUTHORITY

      Appellee

C.A. No.      25425


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2009-10-7364

DECISION AND JOURNAL ENTRY

Dated: June 1, 2011

---

CARR, Judge.

{¶1} Appellant, Lisa Hammond, appeals from a judgment of the Summit County Court of Common Pleas that affirmed the decision of the Akron Metropolitan Housing Authority ("AMHA") to terminate her housing subsidy because she violated the program rules. This Court affirms.

I.

{¶2} In February 2007, Lisa Hammond began receiving a monthly housing subsidy through the federal "Section 8" Housing Choice Voucher Program. As part of her eligibility to receive the subsidy, Hammond listed herself as the only adult residing in the subsidized unit and agreed to abide by certain rules, which included a requirement that she provide true and complete information to AMHA and that she receive written approval from AMHA before any other adult was permitted to stay in her unit more than four consecutive days or for more than 15 days in a 12-month period. Her agreement with AMHA further provided that she understood that her

subsidy could be cancelled for her failure to comply with any of the enumerated family obligations.

{¶3} Through a letter dated March 11, 2009, AMHA notified Hammond of its intention to cancel her housing subsidy because she had violated certain family obligations by allowing an unauthorized adult named Dalton Snow to reside in her subsidized unit. Hammond admitted that Snow frequently visited her unit, but denied that he ever resided with her. Following an informal hearing, the hearing officer found that Hammond had violated the enumerated family obligations by allowing Snow to reside with her and that her subsidy was properly terminated. Hammond appealed that decision to the Summit County Court of Common Pleas, which affirmed the decision to terminate her housing subsidy. Hammond appeals to this Court and raises three assignments of error, which will be consolidated and rearranged for ease of discussion.

III.

### ASSIGNMENT OF ERROR II

"THE COURT OF COMMON PLEAS ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT FAILED TO FIND THAT AMHA VIOLATED MS. HAMMONDS' RIGHT OF DUE PROCESS BY IMPROPERLY PLACING THE BURDEN OF PROOF ON HER AT THE ADMINISTRATIVE HEARING RATHER THAN ON AMHA."

### ASSIGNMENT OF ERROR III

"THE COURT OF COMMON PLEAS ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT AFFIRMED THE HEARING OFFICER'S DECISION WITHOUT SUFFICIENT EVIDENCE TO SUPPORT A FINDING THAT MS. HAMMOND VIOLATED A FAMILY OBLIGATION."

{¶4} Hammond's second and third assignments of error are that the trial court erred in affirming the decision of the hearing officer because it was not supported by the evidence

presented at the hearing and was in violation of her right to due process because it improperly placed the burden of proof on her, rather than AMHA.

{¶5} We begin by emphasizing the deferential standard under which we review an administrative appeal. Although the trial court is required to consider "the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03, [to determine] whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence," this Court's review is even more deferential to the decision of the administrative body. *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147. This Court is required to affirm the decision of the trial court unless it determines "as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34; see, also, R.C. 2506.04.

{¶6} AMHA presented evidence that Hammond had listed herself as the only adult residing in the subsidized unit and never sought or obtained permission from AMHA to add another adult household member. As part of Hammond's eligibility to receive her housing subsidy, she agreed to abide by certain rules, called "Family Obligations," which included number 4, that all information she supplied to AMHA "must be true and complete" and number 11, which provided in part that "the composition of the assisted family residing in the unit must be approved by the [Public Housing Agency, 'PHA']" and "[t]he family must request, in writing, PHA approval to add any other family member as an occupant of the unit." Family Obligation number 20-C provided that "[a]ny adult not included on the [HUD Form] 50058 who has been in the unit more than four consecutive days, or a total of 15 days in a 12-month period, will be considered to be living in the unit as an unauthorized household member."

{¶7}    She signed the Family Obligations on October 21, 2008, directly below a statement that read, "I have read and been given the opportunity to discuss HUD's revised family obligation.  I understand that AMHA is authorized to cancel housing assistance to my family for failure to comply with the above mentioned Family Obligations."  Hammond was also given a copy of this agreement.

{¶8}    Federal regulations governing the Housing Choice Voucher Program require the opportunity for an informal hearing to determine whether the agency's decision to terminate assistance is in accordance with law.  24 C.F.R. Section 982.555(a)(1)(v).  The regulations further provide that "[t]he administrative plan must state the PHA procedures for conducting informal hearings for [Housing Choice Voucher Program] participants." 24 C.F.R. Section 982.555(e)(1).  The "Visitors" section of AMHA's Administrative Plan provided, in relevant part:

> "Any adult not included on the HUD 50058 who has been in the unit more than 4 consecutive days without PHA approval, or a total of 15 days in a 12-month period, will be considered to be living in the unit as an unauthorized household member.

> "Absence of evidence of any other address will be considered verification that the visitor is a member of the household.

> " ***

> "Use of the unit address as the visitor's current residence for any purpose that is not explicitly temporary shall be construed as permanent residence."

{¶9}    AMHA presented evidence that Snow resided in Hammond's unit on an ongoing basis.  An AMHA police officer testified that AMHA had received a complaint from Snow's mother that Snow was residing in Hammond's unit in violation of Hammond's agreement with AMHA.  His investigation included going to the apartment on December 8, 2008, and speaking with Hammond.  Hammond admitted that Snow had lived with her, but that he had since moved

out because he was incarcerated due to domestic violence against her. On January 9, 2009, the officer verified with the post office that Snow had been using Hammond's address as his mailing address. Aside from Hammond testifying that she tried to keep Snow away and he kept coming back, she admitted that he had been her boyfriend and that he had stayed over at her apartment approximately one or two nights per week over a period of several months while they were together. She also admitted that she allowed him to use her address as his mailing address. Given the evidence presented at the hearing, this Court cannot say, **"**as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Kisil*, supra.

{¶10} Next, Hammond argues that her due process rights were violated because the hearing officer placed the burden on her to prove that Snow was a visitor, and not an unauthorized household member. Hammond did not raise this issue at her administrative hearing but raised it for the first time in her appeal to the court of common pleas.

{¶11} Moreover, the "Visitors" section of the AMHA's Administrative Plan further provided, in relevant part:

> "The burden of proof that the individual is a visitor rests on the family. In the absence of such proof, the individual will be considered an unauthorized member of the household and the PHA will terminate assistance since prior approval was not requested for the addition."

{¶12} Hammond relies on the case of *Basco v. Martin* (C.A.11, 2008), 514 F.3d 1177, 1182, in which the court held that, despite such language in an administrative plan, the housing authority "must initially present sufficient evidence to establish a prima facie case" that the recipient of the subsidy violated the family obligations in a manner that justified termination and that "[t]hereafter, the Section 8 participant has the burden of production to show 'that the individual is a visitor.'" Id. Because the evidence supporting the termination of Basco's subsidy

consisted merely of two unauthenticated hearsay documents that an unauthorized adult had been present in her subsidized unit, the court found that her due process rights had been violated. *Id.*

**{¶13}** In this case, unlike the situation in *Basco*, AMHA presented ample evidence to make a prima facie showing that Snow was an unauthorized adult who had stayed at Hammond's residence on an ongoing basis, which was sufficient to create a presumption that he was residing there. Hammond did not dispute that Snow was not authorized to reside in her apartment, that he spent the night there on a regular basis, or that he received his mail at her address.

**{¶14}** Although Hammond suggests that she was given no opportunity to refute the evidence presented by AMHA, the record reveals that she was allowed to testify, present a witness, cross-examine each AMHA witness, and was given the opportunity to file a post-hearing brief. She had the opportunity to rebut AMHA's evidence, but failed to present any evidence that Snow was merely a visitor instead of an unauthorized household member. She has failed to demonstrate that the manner in which the hearing officer conducted the hearing deprived her of her right to due process. Hammonds's second and third assignments of error are overruled.

### ASSIGNMENT OF ERROR I

> "THE COURT OF COMMON PLEAS ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT FAILED TO FIND THAT AMHA'S DECISION WAS UNLAWFUL AND VIOLATED LISA'S RIGHTS UNDER THE FEDERAL VIOLENCE AGAINST WOMEN ACT, 42 USC § 1437(f)."

**{¶15}** Hammond's first assignment of error is that the trial court erred by failing to find that AMHA's decision to cancel her subsidy violated her rights under the federal Violence Against Women Act, as set forth in 42 U.S.C. Section 1437f(c)(9)(C)(i), which provides that "[c]riminal activity directly relating to domestic violence *** engaged in by a member of the

tenant's household or any guest *** shall not be cause for termination of assistance *** if the tenant *** is the victim *** of that domestic violence[.]" 42 U.S.C. Section 1437f(c)(9)(C)(iv) further provides:

> "Nothing in clause (i) limits any otherwise available authority of *** the public housing agency to terminate assistance to a tenant for any violation of a lease not premised on the act or acts of violence in question *** provided that the owner or manager does not subject an individual who is or has been a victim of domestic violence *** to a more demanding standard than other tenants in determining whether to evict or terminate."

{¶16} Hammond argues that the evidence established that she was the victim of domestic violence perpetrated against her by Dalton Snow and that AMHA improperly terminated her subsidy due to that violence. Again, the record reveals that Hammond did not raise this issue at her administrative hearing.

{¶17} The record also demonstrates that, unlike the case upon which she relies, *Metro North Owners, LLC v. Thorpe* (2008), 870 N.Y.S.2d 768, in which a woman lost her Section 8 subsidy because repeated acts of domestic violence had disturbed others in and around the building, Hammond's subsidy was not terminated due to an incident or incidents of domestic violence. Although Hammond testified that she had been the victim of violence during her relationship with Snow and that she had called for police intervention on more than one occasion, no other evidence about the domestic violence incidents, police reports, or resulting charges against Snow was presented at the hearing.

{¶18} There was no evidence to suggest that any incidents of violence between Snow and Hammond had prompted AMHA to investigate Snow's presence in her apartment or take action to terminate her subsidy. AMHA investigated Hammond, and ultimately terminated her subsidy, because it received a call from Snow's mother that Snow had been living with Hammond without AMHA authorization. There was no evidence that Snow's mother mentioned

violence, but only that he was living there. Nothing in the record suggests that AMHA treated Hammond any differently from other subsidy recipients in its investigation of her alleged violations of the Family Obligations or in its decision to terminate her subsidy. See 42 U.S.C. Section 1437f(c)(9)(C)(iv). Hammond has failed to demonstrate that the decision to terminate her housing subsidy violated 42 U.S.C. Section 1437f(c)(9)(C)(i). Hammond's first assignment of error is overruled.

## III.

{¶19} The assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
<u>CONCURS</u>

BELFANCE, P. J.
<u>CONCURS IN JUDGMENT ONLY</u>

<u>APPEARANCES:</u>

PAUL E. ZINDLE, Attorney at Law, for Appellant.

JAMES D. CASEY, Attorney at Law, for Appellee.