**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0181n.06

**Nos. 11-4419/12-3029**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Feb 19, 2013*
DEBORAH S. HUNT, Clerk

NANCY WOODS, CAULENE FULLER,
CARLA MCCULLOUGH, in their own right
and as representatives of all similarly situated
Lucas Metropolitan Housing Authority Section
8 Housing Choice Voucher Program
participants,

        Plaintiffs-Appellants/Cross-Appellees,

v.

LINNIE WILLIS, personally and in her official
capacity as Executive Director, Lucas
Metropolitan Housing Authority; MARGARET
MIRACOLA, personally and in her official
capacity as Director, Lucas Metropolitan
Housing Choice Voucher Program; CANDACE
RENNER, personally and in her official
capacity as Hearing Officer, Lucas
Metropolitan Housing Authority,

        Defendants-Appellees/Cross-Appellants.

                             /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

BEFORE:    CLAY and STRANCH, Circuit Judges; BELL, District Judge.[*]

      **CLAY, Circuit Judge.**  Plaintiffs-Appellants Nancy Woods, Caulene Fuller and Carla

McCullough filed the underlying action, under 42 U.S.C. § 1983, as present and former participants

of the Housing Choice Voucher Program of § 8 of the United States Housing Act of 1937 ("Housing

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

Act"), 42 U.S.C. § 1437f, asserting that the Lucas Metropolitan Housing Authority's ("LMHA") § 8 Housing Program's termination policy operates to deprive participants of their property interests in violation of the due process clause of the Fourteenth Amendment and various applicable statutes. Plaintiffs bring this joint appeal from the district court's order granting in part Defendant's motion to dismiss pursuant to Federal Rule Civil Procedure 12(b)(6), and the order granting in part Defendant's subsequent motion for summary judgment. Defendant cross-appeals from the order granting in part Plaintiff Fuller's cross-motion for summary judgment. For the following reasons, we AFFIRM both orders.

## BACKGROUND

1. *LMHA § 8 Housing Program*

Defendant Linnie Willis is the executive director of LMHA, the Public Housing Authority in Lucas County, Ohio, that administers to low-income individuals and families the § 8 Housing Choice Voucher Program ("Housing Program"). LMHA determines tenant eligibility under the applicable regulations. The amount of assistance provided is dependent on the number of individuals living in the household. Approved families must select and maintain housing that meets the program's quality standards and that are approved by LMHA, which in turn enters into housing assistance payments ("HAP") contracts with the landlords. 24 C.F.R. § 982.1(a)(2).

Participating families are assigned a housing specialist and have obligations under the Housing Program, including disclosing household income, allowing inspection of the unit, providing the housing authority with eviction notices, and notifying LMHA before the family moves from an approved residence. *See id*. § 982.551. Violating an obligation may result in termination from the

2

Housing Program. *Id*. §§ 982.552–.553. However, the participant must have an opportunity for an informal hearing to challenge the basis for the termination decision and to consider whether the decision comports with federal law. *See id.* § 982.555(a)(1)(v).

LMHA has in place written procedures for conducting informal hearings. A housing specialist or inspector is required to advise the managers that a cause for termination has materialized. LMHA then issues to the participant a notice that includes a brief statement of the reason for termination and advises him or her of the right to an informal hearing. Upon a request submitted by the deadline specified in the notice, LMHA schedules informal hearings with a hearing officer. The housing specialist compiles all of the relevant documentation used to make the initial termination decision into one file and submits it for the hearing officer's review. At the informal hearing, the hearing officer reviews the file submitted and affords participants an opportunity to explain why their eligibility should not be terminated before making a final decision. The decision is mailed to the participant some time after the hearing.

Plaintiffs contend that LMHA's practices and procedures surrounding and including the informal hearing are unconstitutional and violate applicable regulations. Although Plaintiffs filed this action jointly in an apparent effort to obtain class certification, their claims and circumstances are substantially distinct, requiring this Court to address each separately for the sake of clarity.

## 2.      Plaintiffs' Factual Background

### A.      Nancy Woods

Woods began participating in the Housing Program in 2007. On March 6, 2008, her housing unit failed LMHA's annual housing quality standards inspection, and the landlord was provided an

opportunity to make repairs. Aware that she could be required to move, Woods took steps required to move as a Housing Program participant. She first attended LMHA's required Rehousing Update Class. Then, upon notice that her unit failed another inspection and repairs were necessary to avoid termination on July 1, 2008 of the HAP contract, Woods submitted two Request for Tenancy Approval forms to LMHA, seeking the requisite approval to move into different homes. However, both requests were denied because the units were overpriced.

Thus, on July 1, Woods moved into a hotel in the belief that she would no longer be authorized to remain on the property. However, despite telling her landlord of her decision to move, she did not submit a 30-Day Notice of her intent to move to LMHA or the landlord, in violation of LMHA's policy, of which Woods was aware.

Upon learning that Woods vacated her unit, LMHA issued to her a Notice of Cancellation on July 11, stating that her Housing Program eligibility would be terminated on July 15 because she "vacate[d] without notice." (R. 47, Ex. 4, Woods Notice of Cancellation.) On or about the same day, Woods submitted a third Request for Tenancy Approval Form after negotiating a lower rent payment with the landlord of one of the units previously denied. She also submitted a timely hearing request shortly thereafter, on July 17, which was not scheduled (for reasons still disputed) until December 8, 2008. In the interim, Plaintiff was denied approval for her third tenancy request, and alleges that it was because she was "not eligible to re-house at the present time. (Currently at hearing stage)." (R. 12, at ¶ 46.) Consequently, Woods was not provided any housing assistance in the five months before her December hearing.

4

At her hearing, Woods' attorneys asserted only that Woods' failure to follow the policy was *de minimis* because she provided sufficient notice by submitting a transfer request and attending the rehousing class. There were no witnesses presented by LMHA at the hearing; the only evidence presented was Woods' own testimony. Woods admitted that she did not submit the requisite 30-day Notice form, which proved to be dispositive. On January 16, 2009, the hearing officer issued a decision upholding the termination "due to the fact that [Woods] vacated [her] unit without notice and without [LMHA's] approval to rehouse." (R. 47, Ex. 4, at PID #774.)

**B**.    **Caulene Fuller**

Fuller became a member of the voucher program in August 2008, with her son, D.W., listed as a household member. In 2009, in the midst of an apparent domestic dispute, D.W.'s father, Jason Watts, sent a letter to LMHA asserting that Fuller had committed fraud by claiming custody of her son when in fact he was the custodial parent. Attached to the letter was an order from the juvenile court, stating that Watts had legal custody of D.W., but also that both parents shared physical custody. LMHA issued Fuller a Notification of Cancellation, stating that her Housing Program eligibility would be terminated because she committed "fraud, in stating that [she had] custody of [D.W.]" (R. 39, Ex. 4, Fuller Notice of Cancellation.) Fuller timely requested a hearing, which was held on September 10, 2009.

Assuming it was Watts who contacted LMHA, Fuller obtained a letter from her caseworker that addressed why D.W. was living in Fuller's home. At the hearing, Fuller submitted her caseworker's letter and testified on her own behalf, asserting that D.W. in fact lived with her and, thus, her answers as to whether he was in the household were not fraudulent. However, Watts was

5

not present at the hearing so as to provide Fuller an opportunity to question him before the hearing officer. Instead, the hearing officer weighed Fuller's file, which included Watts's letter, against her testimony and evidence at the hearing to come to a decision. On September 21, 2009, the hearing officer issued a decision which stated:

> "According to CFR 982.551, this letter is to notify you of the final results of your informal hearing that was held on September 10, 2009 to discuss your continued eligibility as a Section 8 program participant. *The hearing resulted from the fact that you were involved in fraud, stating custody of [D.W.]. As a result of your hearing, you may remain on the program with the removal of [D.W.], until such time as you are granted legal custody.* It is recommended you seek legal counsel for this matter."

(R. 39, Ex. 6, Decision Letter (emphasis added).)

### C. Carla McCullough

McCullough, a Housing Program participant since 2002, accepted a job as a hair stylist in 2006 that brought in varying amounts of money each month. She informed her LMHA housing specialist of the position and unstable pay, and the housing specialist instructed McCullough to bring her pay stubs to their annual review to ensure that LMHA's voucher payments were accurate. McCullough complied.

Shortly after the review, in a Notification of Cancellation dated September 3, 2008, LMHA informed McCullough that her voucher was being terminated because she was "over-income." (R. 12, Amended Compl. ¶ 79.) The letter advised her that she could request a hearing by September 12, 2008. Unfortunately, McCullough never received this letter, as it was delivered to a neighbor. Upon receipt of the letter from the neighbor on September 17, 2008, McCullough requested a hearing from LMHA. The Housing Program's supervisor advised McCullough to submit a written

hearing request, explaining why she missed the original deadline. McCullough complied, and awaited LMHA's review of her request.

In January 2009, McCullough was advised that LMHA would review the file to determine if a hearing was necessary. LMHA ultimately decided to uphold the termination decision without conducting a hearing.

### 3. Procedural History

#### A. Cause of Action

Plaintiffs filed their complaint in October, and later amended it in November, against the following Defendants, personally and in their official capacities: Linnie Willis (Executive Director of LMHA), Margaret Miracola (Director of LMHA), and Candace Renner (Hearing Officer for LMHA). Plaintiffs allege that LMHA failed: to give timely, pre-termination notice stating the basis for termination and to provide the opportunity for a hearing before termination (claim one); to provide program participants with an opportunity to confront and cross-examine each witness relied on by the housing authority (claim two); to make decisions based solely on evidence at the hearing and issue a written decision specifically setting forth the reasons for the decision (claim three); and to conduct informal hearings with an impartial hearing officer (claim four), in violation of the Due Process Clause of the Fourteenth Amendment. Plaintiffs also advance several statutory claims under 42 U.S.C. §§ 1437d and 1437f, and 24 C.F.R. § 982.555(c): statutory counterpart of claim one (claim five); statutory counterpart of claim four (claim six); statutory counterpart of claim two (claim seven); and LMHA failed to issue sufficiently specific decisions and to base factual determinations on a preponderance of the evidence (claim eight).

In December, Plaintiff Fuller and Defendants entered into a stipulated agreement, which provided that she could remain in the Housing Program with her son as a household member, subject to the next annual review, and Fuller agreed to withdraw her motion for a preliminary injunction.

**B.     Motion to Dismiss**

In September 2010, the district court granted in part Defendants' motion to dismiss, disposing of claims one, five, and eight in their entirety, and part of claim three,[1] but denied the motion as to the remaining claims. The court disagreed with Defendants' argument that Fuller lacked standing after the stipulated agreement, holding that Defendants' voluntary cessation did not moot the case where it was unclear whether the alleged behavior would recur. The court also held that Defendant Renner was entitled to quasi-judicial immunity and dismissed the official capacity claims against Renner and Miracola as duplicative. The court dismissed all of Plaintiff McCullough's claims for lack of standing, and later denied her motion for certification of final judgment.

**C.     Motion for Summary Judgment**

After discovery, the remaining parties filed cross-motions for summary judgment on the remaining claims. The district court entered judgment in favor of Plaintiff Fuller on claim two and its statutory counter part, claim seven. The court found that the adverse decision was in fact based on a determination that Fuller committed fraud, which could be supported only by a letter written by her son's father; and thus, the failure to allow her to cross-examine him was unconstitutional and violated federal statutory requirements as a matter of law. The court entered judgment in the one

---

[1]The court did not address the validity of the first part of claim three, the alleged failure to make decisions based solely on evidence at the hearing, because Defendants did not provide an argument regarding it.

remaining Defendant's favor on the remaining part of claim three and claims four and six as to both Fuller and Woods, and claims two and seven as to Woods. Woods was denied relief on all claims. The court also disregarded Woods' effort to revive part of claim one, asserting that she failed to plead facts sufficient to alert the court to her claim, and failed to brief the issue in the motion to dismiss.

Plaintiffs timely appealed. Woods appeals the order denying her summary judgment motion on claims two, three, four, and six, and the order granting Defendant's motion to dismiss claim one for failure to state a claim. Fuller appeals the denial of summary judgment on claims four and six, and the dismissal of claim one for failure to state a claim. McCullough appeals from the order dismissing her claims for lack of standing. Defendant timely cross-appealed the grant of summary judgment to Fuller on claims two and seven.

## DISCUSSION

### I. DISMISSAL OF MCCULLOUGH'S CLAIMS

#### A. Standard of Review & Applicable Law

This Court reviews a district court's decision to dismiss a plaintiff's suit for lack of constitutional standing *de novo*. *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010). A plaintiff has standing where: 1) she has suffered an "injury in fact," 2) that is "fairly traceable to the challenged action of the defendant," and 3) will likely be "redressed by a favorable decision." *Id*. (citation and internal quotation marks omitted). All material factual allegations of the complaint must be accepted as true and construed in the plaintiff's favor. *Id.*

**B.     Analysis**

This matter is better resolved under Federal Rule of Civil Procedure 12(b)(6) than as a standing issue. McCullough has suffered an "injury in fact," termination from the Housing Program, which is apparently traceable to Defendant's decision to uphold the termination decision, and would indeed be redressed by a decision in her favor. However, even when the facts alleged are viewed in a light most favorable to her, *see Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007), McCullough fails to state a claim upon which relief can be granted. McCullough does not assert that her delayed request was at all due to some failure on LMHA's part. She acknowledges that she was provided with notice and an opportunity to be heard. However, she admits that she did not avail herself of this opportunity within the requisite time frame. She did not have an indefinite right to a hearing. Consequently, she cannot now claim that Defendant denied her due process.

Accordingly, this Court affirms the dismissal of McCullough's claims.

**II.     DISMISSAL OF CLAIM ONE[2]**

**A.     Standard of Review**

This Court reviews *de novo* the district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Wells*, 506 F.3d at 427. The motion should be granted where a plaintiff "can prove no set of facts which would entitle him to relief," reading all the factual allegations in the light most favorable to him. *Id*. (citation and internal quotation marks omitted).

---

[2]Plaintiffs do not reference the statutory counterpart, claim five, in this appeal, and therefore, this Court does not address it in this opinion. However, its worth noting that because the statutory requirement of "a brief statement of [the] reasons for the decision," 24 C.F.R. § 982.555(c)(2)(i), is identical to the minimum due process requirement in *Goldberg*, claim five would be resolved in the same manner as claim one.

"Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted).

**B.      Applicable Law**

Participation in a public housing program is a property interest protected by due process. *Davis v. Mansfield Metro. Hous. Auth.*, 751 F.2d 180, 184 (6th Cir. 1984). Due process requires that Housing Program participants receive adequate notice of the grounds for termination, and must be afforded an informal hearing prior to termination. *See Davis*, 751 F.2d at 185 & n.4; *Goldberg v. Kelly*, 397 U.S. 254, 266–71 (1970) ("[T]he stakes are simply too high . . . and the possibility for honest error or irritable misjudgment too great, to allow termination of aid without giving the recipient a chance, if he so desires, to be fully informed of the case against him so that he may contest its basis and produce evidence in rebuttal.")

**C.      Analysis**

This Court finds that the district court properly dismissed Woods' and Fuller's allegation that they were provided inadequate notice, and properly found that Woods waived the first part of claim one, that she was terminated prior to receiving an informal hearing. We address the dismissal as to each Plaintiff below.

*1.      Woods' Notice Claims*

Woods asserts on appeal that her notice claim is twofold: 1) that she was terminated before the informal hearing, and 2) that notice of cancellation was unconstitutionally deficient. However, Woods has waived the first part of this claim for failing to defend it against Defendant's motion to dismiss claim one in its entirety. Plaintiffs' response to the motion briefed only this part of claim

one with respect to McCullough. Despite arguing this matter on appeal, Woods' failure to defend against the motion to dismiss leads us to the same conclusion as the district court; she has waived this claim and we do not reach the question of whether it was properly dismissed. *See Berger v. Medina Cty. Ohio Bd. of Cty. Comm'rs*, 295 F. App'x 42, 45 (6th Cir. 2008).

We do, however, reach the sufficiency of the second part of claim one—that the notice of cancellation was deficient—and find that the district court properly dismissed it. The most favorable reading of the amended complaint fails to yield any facts to support this allegation. Woods admits that the notice of cancellation stated that she was being terminated because "client vacate[d] without notice." (R. 12, at ¶ 40.) Woods does not assert any facts that suggest she was terminated for any other reason, or that she actually provided the notice required (i.e., the 30-Day Notice form). This Court finds that Woods' claim one was properly dismissed.

### 2.    *Fuller's Notice Claims*

Fuller's appeal from the dismissal of her notice claim is also unpersuasive. Her notice of cancellation stated that she would be terminated for "fraud, in stating that you have custody of [D.W.]." (R. 12 at ¶ 54.) Yet, Fuller asserts that the notice of cancellation sent to her was not sufficiently specific in that it did not "identify the specific circumstances," "who she allegedly told," or "when she allegedly made the statement." (Pls.' Br. 52.) The law does not require such detail. The notice of cancellation is required to enable participants the opportunity to prepare a defense, *Escalera v. New York City Hous. Auth.*, 425 F.2d 853, 862 (2d Cir. 1970), and therefore, it must only be "sufficiently specific for it to enable an applicant to prepare rebuttal evidence to introduce at his hearing appearance," *Billington v. Underwood*, 613 F.2d 91, 94 (5th Cir. 1980). Here, the notice of

cancellation allowed Fuller to prepare a defense against the fraud allegation, which was the basis of the discussion at the informal hearing and the basis for the decision letter.[3] This Court finds that Fuller's claim one was properly dismissed for failure to state a claim.

Accordingly, the order granting in part the Defendant's motion to dismiss is affirmed.

## III. SUMMARY JUDGMENT TO DEFENDANT ON WOODS AND FULLER'S CLAIMS FOUR AND SIX

### A. Standard of Review

This Court reviews grants of summary judgment *de novo*. *Mell v. Anthem, Inc.*, 688 F.3d 280, 285 (6th Cir. 2012). Summary judgment is appropriate where the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All of the evidence and reasonable inferences are drawn in favor of the nonmoving party. However, the nonmoving party must go "beyond the pleadings," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), and provide more than a mere "scintilla of evidence" to overcome a summary judgment motion, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Where a rational trier of fact could not find for the nonmoving party based on the record as a whole, summary judgment should be granted. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Applicable Law

This Court has previously held that there are procedural due process requirements in § 8 Housing termination proceedings, noting that a decision by an impartial hearing panel is one requirement, *Davis*, 751 F.2d at 185 & n.4, which is also compelled by the federal statute, 42 U.S.C.

---

[3]This Court's conclusion regarding the basis of the decision letter is discussed in further detail in the discussion of claims two and seven in Section IV.

§ 1437d(k)(2), and applicable regulations, 24 C.F.R. § 982.555(e)(4). The Supreme Court, in a related context, has held that "an impartial decision maker is essential," *Goldberg*, 397 U.S. at 271 (termination of welfare benefits), and this Court finds that the termination of housing benefits is due no less protection. *See Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996) (applying the *Goldberg* due process requirements to public housing hearings).

However, agencies are provided the benefit of the doubt with regard to impartiality. There is a presumption of honesty and integrity in those serving as adjudicators. *Cobb v. Yeutter*, 889 F.2d 724, 730–31 (6th Cir. 1989) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). The Supreme Court has acknowledged only two cases where something less than actual bias violated due process: 1) the "adjudicator has a pecuniary interest in the outcome;" and 2) the adjudicator has been the "target of personal abuse or criticism from the party before him." *See Withrow*, 421 U.S. at 47. A plaintiff claiming bias has a heavy burden to shoulder, one that is not met with a mere showing that the agency served as both a "prosecutor" and "judge." *Cobb*, 889 F.2d at 730; *see also Richardson v. Perales*, 402 U.S. 389, 410 (1971) ("Neither are we persuaded by the advocate-judge-multiple-hate suggestion. It assumes too much and would bring down too many procedures designed, and working well . . . ."). A plaintiff must demonstrate that "conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Withrow*, 421 U.S. at 47.

Woods and Fuller moved for summary judgment, arguing that the hearing officer, Candace Renner, was biased because she served in two positions at LMHA in that she also served as a mental

health housing specialist. The district court, even assuming that the housing specialist job involved investigative functions, found that Plaintiffs failed to show how Renner's service in two positions resulted in any actual bias toward them. As the district court asserted, Renner's ability to perform both investigative and adjudicative functions as an employee for LMHA could not alone support a due process violation claim. *See Withrow*, 421 U.S. at 47. She is presumed to have conducted the hearings with honesty and integrity, absent a showing of actual bias or a high probability thereof. No such risk exists where the investigative function was not even exercised in Plaintiffs' cases. *See Goldberg*, 397 U.S. at 271 (stating that an official acting as a decision maker should not have "participated in making the determination under review").

On appeal, Plaintiffs have seemingly altered their argument, asserting that Renner actually served dual roles as an advocate and adjudicator in Woods and Fuller's hearings, thus, creating an actual bias against Plaintiffs. Woods and Fuller argue that, unlike *Cobb*, the issue is not whether the same *agency* can perform the role of "prosecutor" and "adjudicator;" but rather, whether the same *individual* can perform both roles. Despite this apparent shift in argument, Plaintiffs assert no facts to support the allegation. Plaintiffs claim that Renner read from documents in the file and asked Plaintiffs questions during the hearing, but this does not support a finding that she acted as a "prosecutor." The record shows the Renner relied on and communicated to Woods and Fuller the facts in their respective files, which were undisputedly prepared by the hearing specialist (not Renner) who proposed the termination. Thus, the "prosecutor," to use Plaintiffs' term, was in essence the hearing specialist whose presence was not needed at the proceeding. Plaintiffs assert no facts to establish that Renner was acting as counsel. The record demonstrates only that she was "an

15

examiner charged with developing facts." *Cf. Richardson*, 402 U.S. at 410 (describing the similar role of a social security hearing examiner).

Additionally, Plaintiffs unsuccessfully attempt to demonstrate actual bias in two ways: 1) that Renner improperly shifted the burden of proof to Plaintiffs in their hearings, and 2) that Renner changed the basis for the termination decisions issued to Woods and Fuller. This Court finds the evidence lacking with respect to these claims as well. First, to support the burden-of-proof argument, Plaintiffs take out of context Renner's deposition statement that in general, the informal hearings provide participants with an opportunity "to tell their side of the story and explain why they should not be terminated." (R. 37, Renner's Depo., at PID #60:25–61:9) Renner goes on to assert that "if there was not sufficient documentation, then the termination couldn't stand." (*Id*. PID #365.) Taken as a whole, the record does not demonstrate any confusion about the burden of proof. Nor do the Plaintiffs assert that Renner's decision was unsupported by the documentation presented in their respective files. Rather, as articulated by the district court, Renner demonstrates an understanding of the "fundamental truth—that participants must necessarily respond to factual allegations in a notice of termination." (R. 61, Order, at 18.) Plaintiffs have not proffered sufficient facts to support their allegation that Renner shifted the burden of proof in their cases.

Plaintiffs' second actual-bias argument—that Renner decided Woods and Fuller's cases on grounds other than the ones asserted in the notices of cancellation—is also unpersuasive. This claim appears to be an effort to revive the already settled issue of the sufficiency of the notice. As discussed above, in Section II, the decision letters submitted to Woods and Fuller stated that the outcomes were in fact based on the same allegations made in the notice of cancellation. For Woods,

her failure to provide the 30-Day notice was the basis of that the decision as reflected in her notice of cancellation. For Fuller, fraud was the basis of her decision as reflected in her notice of cancellation. The record simply does not support Plaintiffs' allegations.

Accordingly, we find that summary judgment on claims four and six, with respect to both Woods and Fuller, was properly granted to Defendant.

## IV.    SUMMARY JUDGMENT TO FULLER ON CLAIMS TWO AND SEVEN[4]

Lastly, Defendant cross-appeals the order granting summary judgment to Fuller on claims two and seven.  This Court affirms based on the insufficiency of the evidence relied upon.

### *Judicial Estoppel*

Defendant argues that the decision rendered was not based on a finding that Fuller committed fraud, but instead on a finding that she improperly listed her son on LMHA's paperwork.  Therefore, according to Defendant, the hearing officer did not rely on hearsay evidence, i.e., the letter from Jason Watts.  As an initial matter, the plain language of the decision letter refutes Defendant's position.  The letter states in relevant part:

> "[T]his letter is to notify you of the final results of your informal hearing . . . .  The hearing resulted from the *fact that you were involved in fraud, stating custody of [D.W.].*  As a result of your hearing, you may remain on the program with the removal of [D.W.], until such time as you are granted legal custody."

---

[4]Defendant contends that Fuller lacks standing after their December 2009 stipulated agreement in which Defendant agreed not to remove Fuller from the program or her son as a household member before the next annual review.  However, Defendant's voluntary cessation does not moot the case, particularly where its alleged reliance solely on hearsay to render a decision is liable to occur again. *See League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008).

(R. 39, Ex. 6, Decision Letter.) There simply is no indication otherwise to support Defendant's assertion.

More importantly, the argument advanced by Defendant is barred by judicial estoppel. "Judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding." *Pennycuff v. Fentress Cnty. Bd. of Educ.*, 404 F.3d 447, 452 (6th Cir. 2005) (citation omitted). In its earlier motion, Defendant moved to dismiss claims three and eight on the ground that, as alleged in Plaintiffs' Complaint, the decision letter mailed to Fuller plainly stated the reason for the decision. The district court apparently adopted this position, evinced by the dismissal of claims three and eight, which were never appealed. Defendant would now have this Court believe that the plainly stated reason is not the actual basis for the decision. Based on Defendant's new argument, this Court would have to believe that the decision letter lacks *any* basis for the hearing officer's decision because the only basis asserted therein is that Fuller committed fraud. We decline to take such a position, which would suggest that Defendant misled the district court in dismissing claims three and eight. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

### *Reliance Solely on Hearsay Evidence*

Thus, finding as the district court did that Defendant's adverse decision (to remove D.W. from the home) was based on a finding of fraud, and because only the letter from Watts supported such a finding, we turn to whether it was improper to base the determination solely on hearsay evidence without providing Fuller the opportunity to cross-examine Watts.

This is an issue of first impression in this Circuit. Hearing officers are required to give participants an opportunity to present evidence and question any witness, 24 C.F.R. § 982.555(e)(5), and due process requires the right to confront and cross-examine witnesses, *Goldberg*, 397 U.S. at 270. However, informal hearings are not bound by the rules of evidence applicable to judicial proceedings. 24 C.F.R. § 982.555(e)(5). Thus, as an initial matter, hearsay evidence is generally admissible in administrative proceedings. *See Myers v. Sec'y of Heath & Human Servs.*, 893 F.2d 840, 846 (6th Cir. 1990).

However, it is less clear whether reliance on hearsay evidence can be the *sole* basis for a termination decision in the § 8 Housing context. Although *Goldberg*, in the welfare context, asserted a right to cross-examination and confrontation, the Supreme Court, in *Richardson v. Perales*, spoke specifically on hearsay evidence. 402 U.S. 389, 402–06 (1971). The Court, in a case concerning the denial of social security benefits, determined that medical reports, despite their hearsay character and an absence of cross-examination, were sufficient to support the decision once the reports' reliability and probative value were proven. *Id.* The plaintiff argued that *Goldberg* compelled a finding that due process was violated by reliance solely on hearsay evidence, but the Court's conclusion considered the fact that the plaintiff refused to exercise his right to subpoena the reporting physicians to provide himself the opportunity for cross-examination. *Id.* 404–05. The *Perales* Court distinguished *Goldberg*, noting that *Goldberg* dealt with termination of benefits and a lack of notice. *Id.* 406–07. To the extent it concerned hearsay testimony, *Goldberg* was concerned more narrowly with situations "where credibility and veracity [were] at issue, as they must be in many termination proceedings" concerning welfare benefits. *Id.* (quoting *Goldberg*, 397 U.S. at 269). The "specter

19

of questionable credibility and veracity" were not at issue in *Perales*. *Id.* at 407. Thus, reliability and probative value were the linchpin of the Court's decisions.

Sister circuits have provided little guidance on this issue. Only the Eleventh Circuit has had the opportunity to address this precise question, in *Basco v. Machin*, where the housing authority relied solely on two police reports to terminate assistance. 514 F.3d 1177, 1182 (11th Cir. 2008). The *Basco* court, in dicta, suggested that hearsay evidence can be sufficient to support an adverse finding if "factors that assure the underlying reliability and probative value of the evidence are present." *Id.* (citation and internal quotation marks omitted). Relying on *Perales*, the Eleventh Circuit considered several factors, including whether the declarant could be subpoenaed, and suggested in dicta that reliance solely on hearsay, particularly when the plaintiffs could not subpoena the declarants, was at the very least questionable. *See id.* at 1183. However, the court ultimately did not resolve that issue and decided the case on other grounds, finding that the evidence was nonetheless insufficient. *Id.*

Lower federal courts and state courts come down on both sides of this issue. On one hand, some courts argue that the right to question any witnesses under the regulations and *Goldberg* plainly refer only to any witness *present* at the hearing. *See Robinson v. D.C. Hous. Auth.*, 660 F. Supp. 2d 6, 16 (D.D.C. 2009); *Tomlinson v. Machin*, No. 8:05-cv-1880-T-30MSS, 2007 WL 141192, at *6 (M.D. Fla. Jan. 16, 2007). Thus, allowing objection to hearsay on right-to-cross-examine grounds would vitiate the principle that hearsay evidence is admissible. *See Beauchamp v. De Abadia*, 779 F.2d 773, 775–76 (1st Cir. 1985). Moreover, the touchstone of due process is reliability rather than cross-examination, and as such, the hearsay evidence must only contain substantial indicia of

reliability. *Costa v. Fall River Hous. Auth.*, 903 N.E.2d 1098, 1110 (Mass. 2009); *Robinson*, 660 F. Supp. 2d at 12. On the other hand, some courts argue that the right to question any witness would equally become meaningless if the housing authority could rely solely on hearsay evidence. *Loving v. Brainerd Hous. & Redevelopment Auth.*, Civil No. 08–1349, 2009 WL 294289, at *6–7 (D. Minn. Feb. 5, 2009); *Edgecomb v. Hous. Auth. of Town of Vernon*, 824 F. Supp. 312, 316 (D. Conn. 1993).

We need not decide whether Defendant may rely solely on reliable hearsay testimony, or if such reliance violates due process or the regulation absent the right to question the declarant, because the evidence here fails under either rule. It is clear that due process would be violated under the *Edgecomb* reading because the Watts letter was the sole basis for the adverse decision rendered against Fuller. But, assuming, *arguendo*, that hearsay evidence can constitute substantial evidence to support a § 8 Housing termination decision, the evidence must be at the very least reliable and of proven probative value. In the instant case, it was not. Defendant relied on an un-notorized, handwritten letter received in the mail, alleged to be from Jason Watts, making claims unsupported by any facts that Fuller committed fraud. The Watts letter's reliability and probative value was nonexistent. *Cf. Basco*, 514 F.3d at 1182–83; *see also Calhoun v. Bailar*, 626 F.2d 145, 149 (9th Cir. 1980) (listing several factors to consider for determining whether hearsay constitutes substantial evidence).

Thus, we affirm the district court's grant of summary judgment to Fuller on claims two and seven because the Watts letter was insufficient to support the adverse decision rendered.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** both of district court's orders regarding the motion to dismiss and the cross-motions for summary judgment.