[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15983
_____

D.C. Docket No. 3:11-cv-00374-RS-CJK

SYLVESTER B. LANE,
MARY LANE,

Plaintiffs-Appellants,

versus

FORT WALTON BEACH HOUSING AUTHORITY,
EXECUTIVE DIRECTOR FORT WALTON BEACH HOUSING AUTHORITY,
GAIL SANSBURY,
in her individual capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(May 20, 2013)

Before HULL, WILSON and HILL, Circuit Judges.

HULL, Circuit Judge:

Plaintiffs-Appellants Sylvester and Mary Lane appeal the district court's dismissal of their "First Amended Complaint" for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Lanes' complaint alleged two 42 U.S.C. § 1983 claims against the Fort Walton Beach Housing Authority ("FWBHA") and its Director, Gail Sansbury, in both her official and individual capacities (collectively, "the Defendants"). The Lanes' claims arose out of the Defendants' termination of their Section 8 housing assistance. After review, and with the benefit of oral argument, we reverse the district court's dismissal of Count 1, affirm the dismissal of Count 2, and remand this case for further proceedings.

## I. PROCEDURAL BACKGROUND

On August 9, 2011, the Lanes filed their initial complaint in federal district court. The Lanes' complaint sought declaratory and injunctive relief, including retroactive reinstatement of their Section 8 assistance, from the Defendants, money damages and attorney's fees and costs from the Defendants, and punitive damages from Defendant Sansbury in her individual capacity.

The same day, the Lanes also filed a motion for a preliminary injunction, requesting that the district court order FWBHA to continue to pay the Lanes' Section 8 assistance. Following a hearing, the district court granted the Lanes' motion and enjoined FWBHA "from terminating [the Lanes]' Section 8 assistance pending resolution of this matter." In its order, the district court noted that, under

the applicable federal regulations, FWBHA was required to make "factual determinations . . . [in termination hearings] based on a preponderance of the evidence," and that "a lack of any meaningful statements by the Hearing Officer who weighed the evidence is problematic."  The district court remanded the Lanes' termination case to the agency so that the Hearing Officer could make an amended determination that would be consistent with the federal regulations.  See 24 C.F.R. § 982.555(e)(6) ("The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision.").

After the district court's remand, the Hearing Officer issued an amended decision affirming the termination of the Lanes' Section 8 assistance.  The Lanes then filed their "First Amended Complaint" (the "complaint"), which asserted two 42 U.S.C. § 1983 claims arising out of the termination of their Section 8 assistance: (1) a Fourteenth Amendment procedural due process claim ("Count 1"); and (2) a claim alleging a violation of the United States Housing Act of 1937, 42 U.S.C. § 1437 et seq. ("Count 2").

The Defendants moved to dismiss the Lanes' complaint for failure to state a claim.  The district court granted the Defendants' motion and dismissed the Lanes' complaint with prejudice.  The Lanes timely appealed.[1]

---

[1]We review de novo the district court's grant of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim.  Redland Co., Inc. v. Bank of Am. Corp., 568 F.3d 1232, 1234 (11th Cir. 2009).

## II. DISCUSSION

Because this case was decided at the motion to dismiss stage, we set forth the allegations in the Lanes' 18-page complaint, which we must accept as true and construe in the light most favorable to the Lanes. See Redland Co., Inc. v. Bank of Am. Corp., 568 F.3d 1232, 1234 (11th Cir. 2009). A complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, but its "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007). And we are guided by Federal Rule of Civil Procedure 8(a)(2), which "require[s] only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" United States v. Baxter Int'l, Inc., 345 F.3d 866, 880 (11th Cir. 2003) (quoting Fed. R. Civ. P. 8(a)(2)).

### A.    Factual Allegations in the Lanes' Amended Complaint

From an unknown date up until February 1, 2011, the Lanes, who live at 120 Merle Circle in Fort Walton Beach, Florida, were participants in the federal Section 8 Housing Choice Voucher Program, administered pursuant to the Housing Act of 1937, 42 U.S.C. §§ 1437–1437z-8, and its implementing regulations. This program provides rental subsidies to lower income households. At all times relevant, Defendant FWBHA administered the Section 8 program in Fort Walton Beach and was designated as a Public Housing Entity ("PHA") under the

4

applicable federal regulations.  Defendant Sansbury is FWBHA's Executive Director.  The complaint referred to FWBHA and Sansbury collectively as "Defendants."

The Lanes are "the sole caregivers and providers for their three . . . adopted grandchildren," one of whom was a minor at the time the complaint was filed.  Both of the Lanes are physically disabled and unable to work, and Mr. Lane suffers from cancer.  The only sources of the Lanes' income are Social Security disability and supplemental security payments.

On February 1, 2011, the Lanes received a certified letter from FWBHA ("the letter") terminating the Lanes' Section 8 assistance.  The letter stated that the Lanes violated the Section 8 Family Obligations, which required that the Lanes request and obtain approval from FWBHA before adding another family member as an occupant of their housing unit.  Specifically, the letter noted that an unapproved person, Mackil Taylor, had "registered as a sexual offender, at [the Lanes'] address on October 23, 2010."  The letter stated that "[a]s you are aware, you are allowed a visitor for 14 days, [] Taylor[']s stay at your residence has exceeded the allowed number of days."

According to the complaint, however, Taylor is Mary Lane's 38-year-old estranged son and has not lived with them since 1992.  Until the Lanes received FWBHA's letter, they did not know that Taylor had used their address on his sex

5

offender registration. Significantly too, the complaint alleged that, after receiving the letter, Mary Lane went to the Okaloosa County Sheriff's Office in an attempt to have her address removed from Taylor's sex offender registration, but she was not able to have the address removed.[2]

The letter advised the Lanes of their right to dispute the termination by requesting an informal hearing, which the Lanes did.

On February 21, 2011, the Lanes attended an informal hearing before Bernard Johnson, a designated FWBHA hearing officer and member of the FWBHA Board of Commissioners. Besides Hearing Officer Johnson, the only persons present at the hearing were the Lanes and Jessica Faircloth, the Lanes' case manager. The hearing was not recorded or transcribed, but the Lanes' complaint recounted in detail what happened at the hearing.

According to the complaint, the Lanes testified at the hearing that Taylor did not live with them and had never lived with them at 120 Merle Circle. The Lanes submitted a call log from the Okaloosa County Sheriff's Office showing that

---

[2]Under the Florida law that requires a sexual offender or sexual predator to register his place of residence, there appears to be no method by which a third party, rather than the sexual offender or predator himself, can modify a registered address. See Fla. Stat. §§ 775.21(6), 943.0435(2)(b).

6

Sheriff's deputies "unsuccessfully tried to make contact with [] Taylor at the Lanes' residence."[3]

At the hearing, the Lanes also submitted these two homeless shelter forms: (1) a "homeless verification form," which showed that Taylor was homeless and presently (i.e., in February 2011) living in San Francisco, California; and (2) a "residency verification" from the City of San Francisco, which showed that, according to the City's "Homeless Management Information System," Taylor had been in and out of various homeless shelters in San Francisco in January and February 2011. Before the hearing, these shelter forms were faxed to FWBHA by the St. Vincent de Paul Society, a homeless shelter in San Francisco.

Case Manager Faircloth, at the hearing, did not have any personal knowledge about Taylor. Rather, Faircloth submitted "Internet printouts from Florida's Sexual Offender Registry website showing that [] Taylor registered as a sex offender listing the Lanes' address as his." These printouts (dated January 10, January 31, and February 21, 2011) were copies of the same October 23, 2010,

[3]While the Lanes' complaint does not quote from the call log, the Lanes did submit a copy of the call log in support of their motion for a preliminary injunction. The call log noted that Taylor registered as a convicted felon on October 18, 2010, but that he failed to register as a sex offender. On October 21, 2010, a Sheriff's deputy went to the Lanes' house around 11:00 a.m. in an attempt to inform Taylor that he needed to register as a sex offender.

According to the call log, the deputy made contact with a man at the house who informed the deputy that "Michael was not in." The deputy advised the man to tell Taylor that he needed to register "correctly" either that day or the next day "so [as] not to be violated." The man advised that Taylor would get the message. That same day, around 3:00 p.m., Taylor called the Sheriff's Office to ask why they were looking for him. The call log does not report anything further. Importantly, it does not state that anyone ever saw or found Taylor physically present at the Lanes' house.

registry form.[4]  And the shelter forms allegedly indicated Taylor was in California in January and February 2011.  Faircloth did not submit any other documents or present any witnesses in support of the termination.

On February 25, 2011, Hearing Officer Johnson sent his initial decision in a letter to the Lanes, affirming FWBHA's decision to terminate the Lanes' Section 8 assistance effective March 1, 2011.  In the letter, Johnson stated that the Lanes had violated their "Section 8 Family Obligations of Participation" by (1) failing to provide true and complete information, and (2) failing to gain approval for the composition of the family living in their unit.  Johnson further stated that "[a]fter thoroughly reviewing your case, I concur with the findings the Section 8 Case Manager presented.  As [the] hearing officer, I feel you failed to supply pertinent information to reverse or overturn this decision.  Your response was not enough to overturn the termination and consequently it will stand . . . ."

FWBHA did not make a rent payment to the Lanes' landlord on March 1, 2011.  Consequently, the Lanes "had only days to come up with their rent to avoid eviction" and this financial crunch caused them to fall behind on their monthly bills.

---

[4]These printouts, which the Lanes also submitted to the district court in support of their motion for a preliminary injunction, showed that on the single date of October 23, 2010, Taylor had reported to the Florida Department of Highway Safety and Motor Vehicles that his permanent address was 120 Merle Circle in Fort Walton Beach, Florida—the Lanes' address. Notably though, but for the dates they were retrieved, the printouts are identical copies of one another; Faircloth simply printed out the form three different times (January 10, January 31, and February 21, 2011).

Subsequently, Hearing Officer Johnson issued an amended decision affirming the termination of the Lanes' Section 8 assistance.  The Lanes' complaint extensively quotes from Hearing Officer Johnson's amended decision.  In that amended decision, Johnson stated these "reasons" for terminating the Lanes' Section 8 assistance:

(1)    Taylor's use of the Lanes' address as his sex offender registration address "put[] [the Lanes] in violation of the Section 8 family obligations" (emphasis omitted);

(2)    in October 2010, "Taylor began living at the [Lane's] address" and "Taylor was found at the address in December 2010.  He confirmed with the Okaloosa County Sheriff's Office that 120 Merle Circle was his permanent residence";

(3)    a sex offender "must request a change of address within 48 hours of the change" and as of the hearing, "th[at] corrective action had not taken place";

(4)    visitors were permitted for a period of 14 days, and as of the hearing, "Taylor's association with [the Lanes'] address ha[d] exceeded the allowed number of days";  and

(5)    the Lanes could have "request[ed that] the Clerk of Court . . . remove their address as Mr. Taylor's home address"  but "[t]hey did not request," despite the Hearing Officer's provision of an extra 36 hours after the hearing for the Lanes to take this action.

(emphasis added).

The Hearing Officer's amended decision also referenced the Lanes' testimony concerning Taylor, but concluded that although "[t]here were numerous times [the Lanes] mentioned [their] disassociation with Mr. Taylor and desire to keep the residing grandchildren safe," the Lanes had never secured a document

9

showing that their address was removed from the registry.  The amended decision did not specifically reference any of the evidence or testimony presented at the hearing.

## B.    Procedural Defects Alleged in Count One of the Lanes' Complaint

As to the alleged procedural defects, the Lanes' complaint asserted that FWBHA: (1) "implement[ed] a grievance policy that improperly place[d] the initial burden at [the] informal hearing on the Section 8 Assistance recipient rather than the PHA, contrary to Basco v. Machin, 514 F.3d 1177, 1182 (11th Cir. 2008)";[5] (2) "fail[ed] to accord the Lanes the right to have the burden of proof be upon the FWBHA to establish by a preponderance of the evidence, as required by [federal regulations], that the Lanes violated [the family obligation provision]"; (3) "misappl[ied] the applicable evidentiary standard and exceed[ed] its legal authority"; (4) "fail[ed] to afford the Lanes the opportunity to confront and cross-examine the persons who supplied information upon which the FWBHA's action [was] grounded"; (5) "fail[ed] to administer the PHA program in accordance with FWBHA's administrative plan . . . by terminating the Lanes' assistance without first giving the Lanes thirty (30) days notice"; and (6) "issu[ed] a written statement on or about February 25, 2011, that did not explain the reasons for FWBHA's

---

[5]FWBHA's Grievance Policy, an excerpt of which was attached to the Lanes' complaint, states that "[a]t the hearing, the Complainant must first make a showing of an entitlement to the relief sought and thereafter the [PHA] must sustain the burden of justifying [the PHA's] action or failure to act against which the Complainant is directed."

decision beyond a bare and conclusory statement of the hearing decision, as required by [federal regulations]."

The Lanes' complaint further alleged that there was no "legally sufficient" evidence showing that Taylor ever lived with them in their housing unit. The Lanes asserted "[t]he only non-hearsay evidence at the informal hearing as to whether [] Taylor resided with the Lanes was the Lanes' testimony that he did not reside with them, and there is no legal basis to discredit the Lanes' testimony."

The Lanes' complaint also asserted that two of the Hearing Officer's stated "reasons to uphold the PHA's decision to terminate" were not supported by any evidence at the hearing. For example, as to the Hearing Officer's statement in his amended decision that "Taylor was found at the [Lanes'] address in December 2010," the Lanes alleged "no one testified at the hearing that [] Taylor was found at the Lanes' address in December 2010." (emphasis added).

Similarly, although the Hearing Officer's amended decision stated that the Lanes were given 36 hours after the hearing to go to the "Clerk of the Court" to remove their address on Taylor's sex offender registry, the Lanes alleged that they were "never told . . . that they could have extra time to go to the Clerk of the Court, or anywhere else, and have their address removed as [] Taylor's home address." In any event, the Lanes' complaint alleged that before the hearing Mary Lane went to

11

the Sheriff's Office and tried to have the Lanes' address removed from the registry but was unable to do so.

Having recounted the complaint's allegations, we turn to the Lanes' claims.

## C.    Constitutional Procedural Due Process Claim

"In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). "There can be no doubt that, at a minimum, the Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of . . . property at the hands of the government." Id. (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S. Ct. 652, 656–57 (1950)). However, "due process is a flexible concept that varies with the particular circumstances of each case, and to determine the requirements of due process in a particular situation, we must apply the balancing test articulated in Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893 . . . (1976)." Id. at 1232–33.[6]

---

[6]Under the Mathews balancing test,
due process generally requires consideration of three distinct factors: [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

12

The parties do not dispute that a PHA's termination of Section 8 assistance is "a deprivation of a constitutionally-protected liberty or property interest" accomplished through state action. Grayden, 345 F.3d at 1232. The issue here is whether the Lanes' complaint has adequately alleged a "constitutionally-inadequate process." Id.

Basco, cited in the Lanes' complaint, involved a procedural due process claim and factual scenario similar to the one alleged by the Lanes. See Basco v. Machin, 514 F.3d 1177 (11th Cir. 2008). In Basco a married couple, the Bascos, received Section 8 assistance. The Bascos brought a § 1983 procedural due process claim against their PHA after it terminated their Section 8 assistance due to the presence of an "unauthorized resident" in their home. Id. at 1178–80. An anonymous person (identified as the Bascos' neighbor) telephoned the PHA regarding (1) "disturbances" at the Bascos' home, (2) "multiple police calls to the [home]," and (3) "the arrest of a member of [the Bascos'] household." Id. at 1179. In turn, the PHA obtained copies of two police reports involving the Bascos. Id.

The first police report, dated February 28, 2005, stated that Mr. Basco had given a sworn statement to the police. Although the sworn statement was not attached, the February report recounted what Mr. Basco said as follows: (1) "his stepdaughter had run away with a man named 'Emanuel Jones,' 'who's staying at

Mathews, 424 U.S. at 335, 96 S. Ct. at 903.

13

the house'"; (2) Mr. Basco had "called Emanuel's stepfather to come and collect Emanuel's belongings"; and (3) "Emanuel's address was the same as [the Bascos']." Id. The second report, dated July 18, 2005, listed an "Elonzel Jones" as an eyewitness to an alleged battery on Mr. Basco by his stepdaughter, and listed Elonzel's address as being the same as the Bascos' address. Id.

Based on these two police reports, the PHA sent the Bascos a "Notice of Intent to Terminate." Id. The Notice advised the Bascos that the PHA intended to terminate their Section 8 assistance based on the presence of an unauthorized resident in their home. Id. Although not expressly stated, the implication from the Notice was that the PHA believed that Emanuel Jones and Elonzel Jones were the same person; that this person had been living in Ms. Basco's assisted unit between February and July 2005; that this period of time totaled more than fifteen days, which was the maximum length of time visitors were allowed; and that Jones was therefore an "unauthorized resident." Id. at 1179–80.

At an informal hearing, the PHA presented as its only evidence copies of the two police reports. Id. at 1180. However, both Ms. Basco and her landlord testified that Jones did not live with the Bascos, and Ms. Basco submitted a notarized letter from Jones's mother stating that Jones had only ever lived at two addresses, neither of which was the Bascos'. The Hearing Officer upheld the PHA's termination decision. Id.

14

On appeal, this Court in <u>Basco</u> concluded that "the PHA has the burden of persuasion and must initially present <u>sufficient evidence to establish a prima facie case that an unauthorized individual has been in the unit more than 15 consecutive days without PHA approval</u>, or a total of 30 days in a 12 month period." <u>Id.</u> at 1182 (emphasis added) (internal quotation marks omitted).  We explained that "[t]hereafter, the Section 8 participant has the burden of production to show that the individual is a visitor." <u>Id.</u> (internal quotation marks omitted).

After addressing the parties' respective burdens, this Court considered whether, consistent with the requirements of procedural due process, a PHA could carry its burden regarding the basis for its termination decision by presenting as evidence only "the unauthenticated copies of the two police reports." <u>Id.</u>  This Court concluded that it could not.  <u>See id.</u> at 1182-83 ("[T]here are due process limits on the extent to which an adverse administrative determination may be based on hearsay evidence.").

As to the February police report describing Mr. Basco's sworn statement, this Court stated "it is insufficient alone to establish that Jones was an unauthorized resident.  It merely establishes that Jones stayed with the Bascos, but <u>it does not speak to the length of his stay</u>." <u>Id.</u> at 1183 (emphasis added).  As to the July police report, this Court concluded that "[e]ven assuming arguendo that the [hearsay] reports and statements were properly admitted, they do not establish that

Emanuel and Elonzel are the same individual and therefore, as with Mr. Basco's alleged statement, <u>do not speak to the length of the stay at the Bascos' residence</u>." Id. (emphasis added). This Court then held that "the police reports presented by the PHA were <u>legally insufficient</u> to establish a prima facie case that either Emanuel or Elonzel had resided at the Bascos' residence <u>for fifteen consecutive days or for thirty days in a twelve-month period</u>." Id. at 1183 (emphasis added). Accordingly, this Court reversed the grant of summary judgment to the PHA on the Bascos' § 1983 procedural due process claim. Id. at 1183–84.

Given this Court's decision in <u>Basco</u> and the extensive allegations in the Lanes' complaint, which must be accepted as true, we conclude that the Defendant PHA has not carried its burden of showing that the Lanes' complaint fails to state a procedural due process claim as a matter of law. <u>Basco</u> discusses two due process principles relevant in Section 8 cases that guide this Court's review in this case. First, in Section 8 termination cases, the PHA bears the burden of proving that the "unauthorized individual" has been in the unit for the required number of consecutive days.[7] Id. at 1182. Second, "there are due process limits on the extent to which an adverse administrative determination may be based on hearsay evidence." Id. at 1182.

---

[7]The PHA regulations at issue in <u>Basco</u> prohibited the Section 8 assistance recipients from having an unauthorized individual in their unit "more than 15 consecutive days without PHA approval." <u>Basco</u>, 514 F.3d at 1182. The PHA regulations at issue here are similar in content, although worded slightly differently, in that they prohibit unapproved guests from "staying with the [Section 8 assistance recipients] for a period in excess of 14 consecutive days."

16

Here, the Lanes have pled sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level" and to call the Hearing Officer's application of these general procedural principles into question. Twombly, 550 U.S. at 555, 127 S. Ct. at 1964. Specifically, the Lanes alleged that the Hearing Officer improperly placed the initial burden of proof or persuasion on them and not on the PHA during the hearing. Additionally, the Lanes alleged that the evidence relied on by the Hearing Officer was not legally sufficient and could not, consistent with procedural due process principles, support an administrative decision that Taylor lived with them and had been in their unit for more than fourteen consecutive days.

As our Basco precedent demonstrates, it is not necessarily the hearsay nature of the registry or the call log that is problematic on the due process front, as hearsay may appropriately be introduced into evidence and may form the basis for a decision in an administrative proceeding such as this one. See, e.g., Basco, 514 F.3d at 1182 ("[H]earsay may constitute substantial evidence in administrative proceedings as long as factors that assure the underlying reliability and probative value of the evidence are present." (quoting U.S. Pipe & Foundry Co. v. Webb, 595 F.2d 264, 270 (5th Cir. 1979) (additional internal quotation marks omitted)); Williams v. U.S. Dep't of Transp., 781 F.2d 1573, 1578 n.7 (11th Cir. 1986) ("Hearsay is admissible in administrative hearings and may constitute substantial evidence if found reliable and credible.").

17

Rather, in this case, as with the police reports in <u>Basco</u>, the hearsay evidence in the sex offender registry, allegedly relied on by the Hearing Officer, did "not speak to the length of [Taylor's] stay." <u>See</u> 514 F.3d at 1183. In <u>Basco</u>, we described the evidence at issue (and we would stress that <u>Basco</u> was a summary judgment case) as "legally insufficient to establish a prima facie case" that the unauthorized person had resided with the Bascos for a consecutive length of time prohibited by the PHA's regulations. <u>Id.</u> As to the duration of Taylor's supposed "stay" with the Lanes, the Hearing Officer stated that Taylor "was found" at 120 Merle Circle "in December 2010," but the Lanes alleged there is no evidence that this occurred either.[8]

Further, the Internet printouts, although printed in January and February 2011, are all copies of Taylor's same October 23, 2010, registration form, and thus they speak only about the same October 23 date. And the homeless shelter forms referred to in the Lanes' complaint indicate "Taylor was in and out of various San Francisco [homeless] shelters in January and February 2011."

---

[8]In addition, although our focus at this stage of the proceedings is on the facts alleged in the Lanes' complaint, we note the following exchange between the district court and counsel for Defendants that occurred at the hearing on the Lanes' motion for a preliminary injunction and concerned whether Taylor was found at the Lanes' residence:

> THE COURT: Nobody ever went to the house and found him there, or signs that he was there?
>
> [COUNSEL]: That may be….

Yet, both the Hearing Officer and the district court relied on the fact that Taylor was found at the Lanes' address in 2010 and confirmed that the Lanes' address was his permanent address.

Beyond the evidentiary issues, the Lanes pled additional allegations that contributed to an overall denial of procedural due process, including an inability to confront or cross-examine witnesses, FWBHA's failure to provide them with adequate pre-termination notice, and FWBHA's failure to issue an adequately reasoned decision.  In its order of dismissal, the district court addressed these allegations but without examining them in the context of either FWBHA's overall termination procedure or in light of the precedent we discussed above.  In short, the totality of the allegations in the Lanes' complaint, viewed in light of Basco, render the Lanes' constitutional procedural due process claim incapable of resolution at the motion to dismiss stage.

## D.    Pre-Termination Notice Claim

We also briefly address the district court's ruling that the notice-related portion of the Lanes' procedural due process claims is moot.[9]

"Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case; it is not enough that there may have been a live case or controversy when the case was filed." Tanner Adver. Grp., L.L.C. v. Fayette Cnty., Ga., 451 F.3d 777, 784 (11th Cir. 2006) (en banc) (internal quotation marks omitted).  "The doctrine of mootness provides that the requisite personal interest that must exist at the commencement of the litigation

---

[9]We review the question of mootness de novo. Tanner Adver. Grp., L.L.C. v. Fayette Cnty., Ga., 451 F.3d 777, 784 (11th Cir. 2006) (en banc).

(standing) must continue throughout its existence (mootness)." Id. (alterations and internal quotation marks omitted).

The Lanes' complaint alleged that, under FWBHA's Administrative Plan and federal regulations, FWBHA was required to provide a Section 8 recipient with 30 days' notice prior to terminating the recipient's housing assistance payments. The Plan, as written, states that "[i]f a hearing procedure is conducted, and the matter is decided in favor of the Housing Authority, the Housing Authority will give the family and the owner a notice in writing of the termination of the [benefit], with an effective date being the last day of the month following the month in which the notice was issued."

Because a hearing was conducted on February 21, 2011, with Hearing Officer Johnson's first notice of termination issued on February 25, 2011, the termination should have become effective on March 31, 2011, i.e., "the last day of the month [March] following the month [February] in which the notice was issued." Under the terms of the Administrative Plan, therefore, the Lanes have a non-frivolous argument that FWBHA should still have made the Lanes' rent payment for March, with March 31, 2011, being the effective date of termination. And the Lanes allege that FWBHA never made the March rent payment on the Lanes' behalf, even after the entry of the preliminary injunction. Accordingly, the

20

Lanes' pre-termination notice claim was not mooted by the Hearing Officer's amended decision.

## E.    Statutory Due Process Claim in Count Two

We now examine Count 2 of the Lanes' complaint, which purports to state a claim under § 1983 based on the Defendants' alleged statutory violation of the Housing Act of 1937, 42 U.S.C. §§ 1437–1437z-8, and the regulations implementing the Act.[10]  As the Supreme Court has noted, "whether a statutory violation may be enforced through § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute.  But the inquiries overlap in one meaningful respect—in either case we must first determine whether Congress <u>intended to create a federal right</u>." <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 283, 122 S. Ct. 2268, 2275 (2002) (quotation marks and citation omitted).

Aside from a general citation to the Housing Act and its implementing regulations, the Lanes have made no attempt at describing or explaining how any specific part of the Act provides them with, or was intended to create, an individual federal right enforceable through § 1983.  And we can locate no specific statutory provision in the Housing Act that confers a federal right relevant to the

---

[10]Pursuant to 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and <u>laws</u>, shall be liable to the party injured in an action at law. . . ." (emphasis added).

21

Defendants' alleged violations of various HUD and local PHA regulations. Furthermore, this Court has held that in the absence of a federal right created by Congress, an implementing regulation cannot create a right enforceable under § 1983. Harris v. James, 127 F.3d 993, 1010–11 (11th Cir. 1997); see also Ritter v. Cecil Cnty. Office of Hous. and Cmty. Dev., 33 F.3d 323, 327 n.3 (4th Cir. 1994) (stating that rights created by regulation alone probably cannot form the basis for a § 1983 action). Thus, we affirm the district court's dismissal of Count 2 of the Lanes' complaint for failure to state a claim.

## F. Denial of the Lanes' Motion for Leave to Proceed in Forma Pauperis

Along with their initial complaint and motion for a preliminary injunction, the Lanes filed a motion for leave to proceed in forma pauperis with supporting financial affidavits. The district court denied the Lanes' motion, finding that the Lanes' "monthly telephone expenses of $180.43 . . . [are] clearly beyond what might be considered a necessity, and Plaintiffs have provided no explanation," and "monthly utility expenses of $455.34 . . . appear to be disproportionate for a residence for which Plaintiffs pay monthly rent of $850.00." The Lanes appeal the district court's denial of this motion.[11]

---

[11]We review a district court's denial of a motion for leave to proceed in forma pauperis under 28 U.S.C. § 1915 for an abuse of discretion. Martinez v. Kristi Kleaners, Inc., 364 F.3d 1305, 1306 (11th Cir. 2004). The district court has wide discretion in ruling on an application for in forma pauperis status, but it cannot act arbitrarily or deny the application on erroneous grounds. Id. at 1306–07.

When considering a motion filed pursuant to § 1915(a), "[t]he only determination to be made by the court . . . is whether the statements in the affidavit satisfy the requirements of poverty." Watson v. Ault, 525 F.2d 886, 891 (5th Cir. 1976).[12] "An affidavit addressing the statutory language should be accepted by the court, absent a serious misrepresentation, and need not show that the litigant is 'absolutely destitute' to qualify for indigent status under § 1915." Martinez v. Kristi Kleaners, Inc., 364 F.3d 1305, 1307 (11th Cir. 2004) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 338–40, 69 S. Ct. 85, 88–89 (1948)). "Such an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." Id. (citing Adkins, 335 U.S. at 339, 69 S. Ct. at 89).

Here, the Lanes' affidavits reflect monthly income of $1,200 in Social Security retirement benefits, or a total of $14,400 per year. Neither of the Lanes is employed, they have three dependents (one of whom was a minor at the time the complaint was filed), and they own only one car: a 1989 Chevrolet pickup truck.

In denying the Lanes leave to proceed in forma pauperis, the district court noted the Lanes spent $180 for telephone expenses each month. However, the

---

[12]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

record indisputably shows the Lanes' telephone expenses total around $60 per month, and the remainder of the balance is an unpaid amount carried over from previous billing cycles. The Lanes' utility bills also reflect balances carried over from month to month that the Lanes are unable to pay off in full. Based on the record, we must conclude that the district court's consideration of these bills as reflecting only "monthly telephone" and "monthly utility" expenses is erroneous.

Furthermore, the Lanes swore to their indigence by affidavit, swore to their limited monthly income, and swore that they were unable to pay for the court fees and costs and to support and provide necessities for themselves and their dependents. See Martinez, 364 F.3d at 1307–08. The Lanes' statement of their limited income has not been challenged. Because the "disproportionate" monthly expenses were the district court's only basis for denying the Lanes' motion, and the record does not support that finding, we conclude the district court abused its discretion in denying the Lanes leave to proceed in forma pauperis. See id. The district court should permit the Lanes to proceed in forma pauperis on remand by refunding their previously paid filing fee.[13]

### III. CONCLUSION

Accordingly, we (1) reverse the district court's dismissal of Count 1; (2) affirm the district court's dismissal of Count 2; (3) reverse the district court's

---

[13]We note the district court granted the Lanes' motions for leave to proceed in forma pauperis on appeal.

24

denial of the Lanes' motion for leave to proceed in forma pauperis; and (4) remand

this case for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HILL, Circuit Judge, dissenting:

This is not an appeal of the Hearing Officer's decision to uphold the Housing Authority's termination of the Lanes' rental assistance. Reversal of that decision is not even within our power.[1]

Rather, we are reviewing the district court's dismissal of the Lanes' claim that they suffered *constitutional* injury during that hearing. The Lanes' claim is not just that the Hearing Officer's decision was "wrong," but that it was the result of constitutional error.

After the hearing, the Lanes sued the Housing Authority in the district court, claiming that the Hearing Officer violated the Constitution by relying exclusively on hearsay in reaching his decision.[2] The district court disagreed and dismissed the Lanes' complaint. It is the district court's dismissal of the Lanes' *constitutional* claim that is before us.

The majority, however, does not address the Lanes' unconstitutional hearsay claim. It summarily concedes that "it is not necessarily the hearsay nature of the

---

[1]   It appears, although not briefed, that there may be no judicial review of these administrative hearings. *See Hahn v. Gottlieb,* 30 F.2d 1243, 1249-51 (1st Cir. 1970).

[2]   I agree with the majority's conclusion that the statutory and regulatory violations alleged in Count 2 of the Lanes' complaint do not state a claim of constitutional injury under Section 1983.

26

registry or the call log that is problematic on the due process front."[3]    That

acknowledgment should have resulted in a summary affirmance of the district

court's dismissal of the Lanes' complaint.

But the majority opinion does not do that.  Instead, it undertakes to review

the evidence supporting the Hearing Officer's decision and to find "reversible

error" in the Hearing Officer's findings of fact that the Lanes' son lived with them

and that he did so for more than fourteen days.  This undertaking is mistaken on

two levels.

1.    *An Erroneous Finding of Fact is not a Constitutional Violation*

First, even if the majority were correct that the Hearing Officer made a

mistake of fact in reaching his decision, that mistake is not of *constitutional*

dimension.[4]  The constitutional guarantee of due process entitles the Lanes to a

fairly reached result, not necessarily a correct one.

Furthermore, the majority does not even claim to have found constitutional

error.  Instead, it characterizes the putative mistake as a "legal insufficiency" of the

evidence.  It compares, at great length, this case to the facts in our *Basco* decision,

which is universally regarded as having avoided the constitutional claim of

---

[3]  I believe that the majority should have applied the *U.S. Pipe* test to assess the reliability of the sex offender registry and call log before conceding that this hearsay could form the exclusive basis for the Hearing Officer's decision.  I believe that the evidence passes this test, but the majority does not inquire. *See U.S. Pipe & Foundry Co.*, 595 F.2d at 270.

[4]  Nor do the Lanes claim that such a mistake of fact would constitute constitutional error.

exclusive reliance on hearsay by finding an insufficiency in the evidence supporting the Hearing Officer's decision. Thus, I can only conclude that the majority believes it is entitled to review the Hearing Officer's decision for evidentiary error and, finding such error, to reverse his decision.

But this is not an appeal from the Hearing Officer's decision. We are reviewing the district court's dismissal of the Lanes' constitutional claim that the Hearing Officer impermissibly relied upon hearsay in reaching his decision, a claim the majority summarily concedes is without merit. Thus, the Lanes' Section 1983 claim of constitutional error is without merit and the district court correctly dismissed it.

2.    *The Hearing Officer's Findings of Fact are not Clearly Erroneous*

Second, even if we were reviewing the Hearing Officer's findings that the Lanes' son resided with them and that he did so for more than fourteen days, I believe that the majority is mistaken in concluding that there was "no" competent evidence from which he could have found these facts.

The Lanes' son registered their home as his address in October of 2010. The police call log revealed that inquiries to the Lanes' home phone quickly resulted in the Lanes' son's making contact with the local police. The Hearing Officer inferred from these facts that the Lanes' son resided with them. The district court

concluded that the evidence was sufficiently reliable to support that inference. I agree.

First, it is a third degree felony under Florida law for a sex offender to misreport his residence in the registry. The district court found that this threat of prison for a false registration would give the Lanes' son a strong interest in correctly registering his address. I agree.

Second, Florida law permits a sex offender to put down almost anything as his address. The Lanes' son could have reported a transient residence, a future temporary residence, a post office box, or even a car as his residence. Thus, the district court found that there was little reason for their son to put down the Lanes' address unless he was actually living there. I agree.

Third, Florida law requires that sex offenders change their registered address within 48 hours of moving. The Lanes' son never changed his registration. The Hearing Officer inferred from this evidence that the Lanes' son resided with them for more than fourteen days. The district court held the evidence reliable. I agree.

Finally, the district court held that the Hearing Officer was entitled not to credit a homeless shelter verification provided by the Lanes showing that their son resided in San Francisco for a period of fourteen days in January of 2011. The district court reasoned that there was no indication that this verification was created with the threat of criminal sanction and that this fact undermined its

29

credibility.  Furthermore, the district court found that the verification, at most, showed only that the Lanes' son lived in San Francisco for a period of fourteen days in January of 2011 and that this fact did not negate the inference to be drawn from the sex offender registry that the Lanes' son lived with the Lanes for over fourteen days from October 2010 to January 2011.  I agree.

Therefore, even if we were tasked with reviewing the evidence supporting the Hearing Officer's decision, and I do not believe we are, it cannot be said as a matter of law that the Hearing Officer drew unreasonable inferences from the evidence before him. The majority's conclusion to the contrary seems to me to be the product of an unauthorized *de novo* review of the facts, substituting its judgment for that of the finder of fact.  In any event, such evidentiary error, even if it existed, would not state a constitutional claim.

Finally, the majority goes on to find additional possible constitutional violations from the "totality of the allegations in the Lanes' complaint," including "an inability to confront or cross-examine witnesses."  This allegation, however, cannot support a claim of constitutional violation in this case.  Any violation of a right to cross-examine witnesses would have to be *statutory* in origin because, as the majority concedes, there is no *constitutional* prohibition on reliance -- even exclusive reliance -- on hearsay in a Section 8 hearing.  The Lanes recognize this limitation and assert that their right to such confrontation arises from a regulation

30

that permits them to confront the witnesses against them in a Section 8 hearing. *See* 24 C.F.R. 982.555 (e) (5).

The majority, however, recognizes that such an allegation of regulatory violation does not state a constitutional claim.[5]  Therefore, it cannot form the basis for a Section 1983 complaint and the district court rightly dismissed it.

I believe that we should affirm the district court's judgment dismissing the Lanes' complaint for failure to state a constitutional claim.

---

[5] As noted above in footnote 2, the majority recognizes that allegations of statutory or regulatory violation do not state a constitutional claim under Section 1983.

31