[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11500

_____

D.C. Docket No. 5:15-cv-02325-AKK


SHEENA YARBROUGH,

                                        Plaintiff-Appellant,

versus

DECATUR HOUSING AUTHORITY,

                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 3, 2018)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and VRATIL,[*] District
Judge.

PER CURIAM:

---

[*] Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

This appeal requires us to decide whether indictments and evidence of an arrest constitute sufficient evidence to support the decision of a public housing authority to terminate housing subsidies provided under Section 8 of the Housing and Community Development Act of 1937, 42 U.S.C. § 1437f. The Decatur Housing Authority terminated Sheena Yarbrough's housing voucher after it learned that she had been arrested and indicted on two counts of unlawful distribution of a controlled substance. A hearing officer found that there was sufficient evidence to support the termination based on nothing more than evidence that Yarbrough had been arrested and copies of the indictments.

Yarbrough filed a civil-rights complaint against the Authority, 42 U.S.C. § 1983, in which she alleged that the termination of her housing voucher violated the Due Process Clause of the Fourteenth Amendment and regulations promulgated by the United States Department of Housing and Urban Development. The district court granted summary judgment in favor of the Authority. It ruled that the indictments and the evidence that Yarbrough had been arrested were sufficient to prove that she engaged in drug-related criminal activity under a preponderance-of-the-evidence standard, and that Yarbrough failed to establish that the Authority's procedures violated due process. We vacate and remand.

2

## I. BACKGROUND

Sheena Yarbrough was a qualified participant in the Section 8 Housing Assistance program operated in Decatur, Alabama, by the Authority under the administration of the Department of Housing and Urban Development. The Section 8 program provides low income families assistance with rental payments. Public housing authorities have the power to terminate assistance under Section 8 if any member of a participating family engages in drug-related criminal activity. 24 C.F.R. § 982.551(l); *see also id*. § 982.553(b)(1)(iii). Indeed, the regulatory requirement to refrain from drug-related criminal activity was incorporated into the terms of Yarbrough's agreement with the Authority. On April 6, 2011, she signed a copy of a document issued by the Department of Housing and Urban Development entitled "Obligations of the Participating Family," which provided that "members of the family may not engage in drug-related criminal activity."

In September 2012, the Authority learned from a newspaper article that Yarbrough had been arrested on state charges for unlawful distribution of a controlled substance. The Authority notified Yarbrough that it intended to terminate her program assistance for participation in drug-related criminal activity. Yarbrough denied any involvement in unlawful activity and requested a hearing. A hearing officer found that the allegations were true and determined that Yarbrough's housing voucher should be terminated. But based on legal advice, the

3

Authority decided that it would postpone its decision to terminate Yarbrough's housing assistance "until a court date or decision was rendered."

On April 11, 2013, a grand jury for the Circuit Court of Limestone County, Alabama, returned two indictments against Yarbrough on charges of unlawful distribution of controlled substances sold to an undercover police informant. After Yarbrough reached an agreement with the prosecution to drop the charges, the Circuit Court issued an order stating that "upon payment of court costs, [the] case will be dismissed." But Yarbrough's agreement with the state did not deter the Authority from resuming its proceedings to terminate her voucher. On October 8, 2015, the Authority sent Yarbrough a second notice of its intent to terminate her participation in the Section 8 program. The notice alleged several grounds for termination, including Yarbrough's arrest and indictment for distribution of a controlled substance.

At Yarbrough's request, the Authority held a second hearing to determine whether her voucher should be terminated. After the hearing concluded, the hearing officer issued a written decision that the Authority failed to establish violations on all counts alleged in the notice except for the allegation that Yarbrough "violated her agreement with the Authority and her lease by engaging in drug-related criminal activity." Based on the latter ruling, the hearing officer upheld the Authority's decision to terminate Yarbrough's participation in the

4

Section 8 program. His decision explained that the evidence of Yarbrough's arrest and indictments for two felony counts of unlawful distribution of a controlled substance was sufficient to establish that Yarbrough engaged in drug-related criminal activity. The hearing officer stated that Yarbrough presented "credible evidence that the cases will be dismissed on payment of court costs." But the hearing officer determined that because the charges remained pending and the indictments were issued by a "duly impaneled grand jury," the evidence was sufficient to establish that "more likely than not, i.e. by a preponderance of the evidence, Ms. Yarbrough engaged in drug related criminal activity in violation of the terms of her agreement with the Authority."

Yarbrough filed a civil-rights suit against the Authority, 42 U.S.C. § 1983, in which she alleged that the Authority violated federal regulations and the Due Process Clause of the Fourteenth Amendment by basing its termination decision on legally insufficient evidence and relying exclusively on hearsay. After discovery, both parties moved for summary judgment. The district court granted summary judgment in favor of the Authority on the grounds that the indictments established that Yarbrough engaged in drug-related criminal activity under a preponderance-of-the-evidence standard and that relying on the indictments comported with due process.

## II. STANDARD OF REVIEW

We review a "summary judgment de novo, applying the same legal standards used by the district court." *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008).

## III. DISCUSSION

Yarbrough challenges the summary judgment in favor of the Authority on two grounds. First, she contends that the hearing officer's determination was premised on insufficient evidence because the probable-cause determination reflected in an indictment or an arrest does not prove that a person engaged in drug-related criminal activity under the applicable preponderance-of-the-evidence standard. Second, she argues that the hearing officer's decision to credit unreliable hearsay violated the Due Process Clause of the Fourteenth Amendment. We conclude that Yarbrough's first argument mandates reversal, so we need not reach her alternative argument.

Under the governing regulation, "[f]actual determinations relating to the individual circumstances of the family" in a Section 8 termination hearing "shall be based on a preponderance of the evidence presented at the hearing." 24 C.F.R. § 982.555(e)(6). In *Basco v. Machin*, 514 F.3d 1177 (11th Cir. 2008), we interpreted this regulation to establish that, in a proceeding to terminate benefits received through the Section 8 program, a public housing authority "has the burden

6

of persuasion and must initially present sufficient evidence to establish a prima facie case" that the recipient committed an act that licenses termination of his Section 8 voucher. *Id.* at 1182. Based on this interpretation, we held that a hearing officer's determination that Section 8 participants permitted an unauthorized individual to reside in their unit was legally insufficient to establish a prima facie case that the participant had actually done so. *Id.* at 1183–84. The only evidence considered by the hearing officer consisted in two unauthenticated police reports that failed even to use the same name to identify the unauthorized individual who allegedly resided with the Basco family. *Id.* at 1183.

Yarbrough maintains that the hearing officer's determination that her voucher should be terminated is invalid under *Basco*. The hearing officer charged with reviewing the decision to terminate her voucher relied exclusively on her indictments for unlawful distribution of a controlled substance and evidence of her associated arrest. Yarbrough argues that because an indictment or valid arrest is based only on a finding of probable cause, the evidence considered by the hearing officer was insufficient to support a factual finding that she engaged in drug-related criminal activity under the preponderance-of-the-evidence standard applicable to Section 8 termination proceedings.

The district court rejected this argument based on the endorsement in *Kaley v. United States*, 571 U.S. 320 (2014), of the principle that a facially valid

7

indictment "'conclusively determines the existence of probable cause' to believe the defendant perpetrated the offense alleged." *Id.* at 328 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117, n.19 (1975)). Based on this premise alone, the district court inferred that the indictments against Yarbrough "are legally sufficient to establish by a preponderance of the evidence, as the hearing officer found, that Yarbrough engaged in the alleged drug-related criminal activity." We reject this reasoning.

A facially valid indictment is undoubtedly competent evidence of "a grand jury's finding of probable cause to think that a person committed a crime," *Kaley*, 571 U.S. at 338, but proof of a crime under a preponderance standard requires more than a finding of probable cause. A probable-cause determination "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt." *Gerstein*, 420 U.S. at 121. That a grand jury determined that the evidence against Yarbrough was sufficient to support a reasonable belief in guilt cannot in itself prove that she more likely than not committed the charged offenses, any more than an indictment for a criminal offense can conclusively prove liability for a civil offense with the same elements.

8

It makes no difference that the hearing officer relied on two indictments and evidence that Yarbrough had been arrested instead of a single indictment. Three probable-cause determinations do not add up to a finding that a person more likely than not committed a drug-related crime. Probable cause "requires only the kind of fair probability on which reasonable and prudent people . . . act." *Kaley*, 571 U.S. at 338 (citations and quotation marks omitted). But an affirmative answer to the question of fair probability does not mean that the person more likely than not committed the charged crime. Even if it is *certain* that there is probable cause to believe that a person committed a crime, it still does not follow that the preponderance of the evidence proves that he actually did so.

Nor are we persuaded by the Authority's response to Yarbrough's challenge. The Authority concedes that "the burden of proof in grand jury proceedings is probable cause," but argues that this fact "does not mean that indictments—tested under cross examination at an informal hearing—cannot also establish that, more likely than not, a recipient engaged in impermissible drug-related criminal activity." Cross-examination cannot transmute a document attesting only to the existence of probable cause into evidence sufficient to ground a finding under a preponderance standard unless the testimony of the witness adds some new information over and above the bare fact that a probable-cause determination was made.

9

We hold that the evidence before the hearing officer was legally insufficient to sustain the Authority's decision to terminate Yarbrough's Section 8 voucher under the preponderance standard in the applicable regulation, 24 C.F.R. § 982.555(e)(6). Under *Basco*, we must vacate the summary judgment in favor of the Authority.

## IV. CONCLUSION

We **VACATE** the summary judgment in favor of the Authority and remand for further proceedings.

WILLIAM PRYOR, Circuit Judge, concurring:

I join the panel's opinion in full because our precedent in *Basco v. Machin*, 514 F.3d 1177 (11th Cir. 2008), requires us to vacate the summary judgment in favor of the Decatur Housing Authority. I write separately to explain why *Basco* is inconsistent with Supreme Court precedent and our precedents and why it should be overruled en banc.

*Basco* invalidated the termination decision of a hearing officer of a local public housing authority in a civil-rights action, 42 U.S.C. § 1983, on the ground that the evidence was legally insufficient under the preponderance-of-the-evidence standard for Section 8 termination hearings. Since then, we have overturned the termination decisions of local housing authorities on the same ground on a semi-regular basis in unpublished opinions. *See, e.g.*, *Lane v. Fort Walton Beach Hous. Auth.*, 518 Fed. App'x 904 (11th Cir. 2013); *Ervin v. Hous. Auth. of the Birmingham Dist.*, 281 Fed. App'x 938 (11th Cir. 2008). The district courts in our Circuit have followed our lead and done so as well. *See, e.g.*, *Goodman v. Hous. Auth. of DeKalb Cty.*, No. 1:17-CV-504-TWT, 2018 WL 3972364 (N.D. Ga. Aug. 20, 2018); *Taylor v. City of Decatur*, No. CV-09-S-1279-NE, 2010 WL 8781926 (N.D. Ala. Dec. 2, 2010); *Carter v. Montgomery Hous. Auth.*, No. 2:09-cv-971-MEF-CSC, 2009 WL 3711565 (M.D. Ala. Nov. 3, 2009). But we have yet to articulate an explanation of why we are entitled to review the garden-variety errors

11

of local housing authorities under section 1983, which provides a cause of action to redress violations of rights created by the Constitution and federal statutes, not a freestanding grant of appellate jurisdiction to review the decisions of local agencies for any and all errors.

We have failed to provide an account of why we are entitled to review the factual findings of public housing authorities because there is no explanation to be found. No provision in the Housing Act of 1937, 42 U.S.C. §§ 1437–1437z-10 creates an individual right to a termination decision based on a finding under a preponderance standard. And no principle of constitutional law licenses a federal court to set aside a local housing authority's welfare-termination decisions for want of legally sufficient evidence. It follows that there is no cause of action to challenge the adequacy of the factual determinations of the hearing officers of public housing authorities under section 1983. We were wrong in *Basco* to presume otherwise.

### A. The Housing Act Does Not Create an Individual Right to A Hearing Enforceable Through Section 1983.

The Supreme Court explained decades ago that "[i]n order to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).  The source of the right to a determination founded on the preponderance of the evidence in Section 8 termination hearings is a regulation, 24 C.F.R.

12

§ 982.555(e)(6), which provides that "[f]actual determinations relating to the individual circumstances of the family" in a termination hearing "shall be based on a preponderance of the evidence presented at the hearing." But we have rejected the proposition that "in the absence of a federal right created by Congress, an implementing regulation can create a right enforceable under § 1983," so this regulation cannot in itself supply a right enforceable through section 1983. *Harris v. James*, 127 F.3d 993, 1011 (11th Cir. 1997). Instead, our precedents dictate that a right created by regulation is enforceable through section 1983 only if there is a federal statute that "itself confers a specific right" and the regulation "merely further defines or fleshes out the content of that right." *Id.* at 1009. If a regulation "defines the content of a statutory provision that creates no federal right" or "if the regulation goes beyond explicating the specific content of the statutory provision and imposes distinct obligations in order to further the broad objectives underlying the statutory provision," the regulation is "too far removed from Congressional intent to constitute a 'federal right' enforceable under § 1983." *Id.*

It follows that the right established by the applicable regulation, 24 C.F.R. § 982.555(e)(6), is enforceable through section 1983 only if it explicates a federal right conferred by the text of the Housing Act. One provision in the Housing Act addresses the procedures governing voucher termination hearings, 42 U.S.C. § 1437d(k). And it provides that "[t]he Secretary [of Housing and Urban

13

Development] shall by regulation require each public housing agency receiving assistance under this chapter to establish and implement an administrative grievance procedure" in which tenants will (1) "be advised of the specific grounds of any proposed adverse public housing agency action"; (2) "have an opportunity for a hearing before an impartial party upon timely request"; (3) "have an opportunity to examine any documents or records or regulations related to the proposed action"; (4) "be entitled to be represented by another person of their choice at any hearing"; (5) "be entitled to ask questions of witnesses and have others make statements on their behalf"; and (6) "be entitled to receive a written decision by the public housing agency on the proposed action." *Id.*

Section 1437d(k) does not create a right to a hearing before a housing authority may terminate a recipient's voucher. A statute can create an individual right enforceable through section 1983 only if it "unambiguously impose[s] a binding obligation on the States." *Blessing*, 520 U.S. at 341. But section 1437d(k) of the Housing Act does not lay any duty on any state actor. Instead, it lays a duty on the *Secretary*. True, the obligation imposed on the Secretary is a duty to develop regulations "requir[ing] each public housing agency . . . to establish and implement an administrative grievance procedure" that satisfies the statutorily mandated criteria, 42 U.S.C. § 1437d(k), which means that the duty imposed on the Secretary is a duty to impose obligations on state actors. But that formula is not

14

enough. Rights enforceable through section 1983 must be the correlates of obligations imposed on state actors by *Congress*. As the Supreme Court has explained, "the initial inquiry" in determining whether a statute creates an individual right enforceable through section 1983 "is no different from the initial inquiry in an implied right of action case, the express purpose of which is to determine whether or not a statute 'confer[s] rights on a particular class of persons.'" *Gonzaga v. Doe*, 536 U.S. 273, 285 (2002) (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)). And "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id*. at 291. "Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Id.*

A congressional instruction to impose a duty on a state actor is not itself an act of imposing a duty on the states. In declining to impose a duty directly on public housing authorities in the text of the Housing Act, Congress also declined to create any statutory right to a termination hearing that could be enforced through section 1983. So the corresponding regulation, 24 C.F.R. § 982.555(e)(6), "defines the content of a statutory provision that creates no federal right," *Harris*, 127 F.3d

15

at 1009,  instead of fleshing out the content of a right conferred by Congress. *Harris*, 127 F.3d at 1009.

Even if we were to assume that section 1437d(k) of the Housing Act creates an individual right to a hearing that comports with the statutory criteria it enumerates, it would not follow that the preponderance standard created by the applicable regulation, 24 C.F.R. § 982.555(e)(6), "merely further defines or fleshes out the content of that right." *Harris*, 127 F.3d at 1009. The statutory criteria require (1) notice of the grounds for the housing authority's proposed action, (2) an opportunity for a hearing before an impartial officer, (3) an opportunity to examine any documentary evidence related to the proposed action, (4) an entitlement to be represented in the hearing by a person of one's choice, (5) an entitlement to confront adverse witnesses and to present the testimony of one's own witnesses, and (6) a written decision. 42 U.S.C. § 1437d(k). None of these provisions could plausibly be "fleshed out" into a requirement that the hearing officer render his decision based on the preponderance of the evidence. So on the assumption that there is a federal right to a termination hearing established by section 1437d of the Housing Act, the corresponding regulation, 24 C.F.R. § 982.555(e)(6), is best understood as one that "imposes distinct obligations in order to further the broad objectives underlying the statutory provision." *Harris*, 127 F.3d at 1009.

16

Simply put, the Housing Act does not create a federal right to a termination hearing in which decisions must be based on the preponderance of the evidence. The Act neither does so in itself nor does so in conjunction with the applicable regulation, 24 C.F.R. § 982.555(e)(6). If *Basco* has a foundation, it must be found elsewhere.

*B.* Basco's *Holding Is Not Grounded in the Due Process Clause.*

The problems attendant to an attempt to explain *Basco* as a decision grounded in a statutory right created by the Housing Act might lead one to wonder whether its holding might be saved by locating a rationale for it in the Due Process Clause. Indeed, our unpublished opinions applying *Basco* have taken steps down this path. In *Ervin*, we suggested that *Basco* is grounded in the principle that a housing authority violates "procedural due process rights under the Fourteenth Amendment" when it "fail[s] to comply with" federal "regulations governing benefits termination procedures." 281 Fed. App'x at 939. *Lane* took a different tack and proposed that *Basco* applied an apparently *sui generis* "due process principle" prohibiting adverse administrative determinations based on evidence that is obviously insufficient to satisfy the burden of proof applicable in an administrative hearing. 518 Fed. App'x at 912. But neither of these theories is workable, and there is no realistic prospect of salvaging *Basco* by reinterpreting it as a decision grounded in the Due Process Clause. There is no principle of due

17

process that guards against an agency decision that deprives a claimant of welfare benefits based on insufficient evidence. Allow me to explain.

In basing a decision on evidence that is insufficient under the applicable regulation, 24 C.F.R. § 982.555(e)(6), a public housing authority commits two analytically distinct errors: (1) depriving a person of a benefit based on insufficient evidence under a preponderance standard, and (2) violating the regulation that requires it to render a decision that is valid under that standard of proof. Our attempts to work out a due process rationale for *Basco* have seized upon one of these errors or the other. In *Lane*, we emphasized the first error and held that allegations that "the evidence relied on by the Hearing Officer was not legally sufficient and could not, consistent with procedural due process principles, support an administrative decision" were sufficient to survive a motion to dismiss. 518 Fed. App'x at 912. In *Ervin* we focused on the second error and held that there was a triable issue of fact as to whether the termination hearing at issue "did not comply with the administrative regulations applicable to Section 8 proceedings." 281 Fed. App'x at 939.

Neither of these regulatory errors constitutes a violation of the Due Process Clause. There is no principle of procedural due process prohibiting an agency's hearing officers from predicating an adverse administrative determination on insufficient evidence. A welfare claimant who alleges that he was deprived of

18

welfare benefits on the basis of insufficient evidence does not "claim[] that he was denied adequate process," but instead "that he was improperly denied his property interest, despite the fact that he received process." *Caswell v. City of Detroit Hous. Comm'n*, 418 F.3d 615, 621 (6th Cir. 2005). But as the Supreme Court has explained, "the Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error." *Mackey v. Montrym*, 443 U.S. 1, 13 (1979). In other words, "[t]he Due Process Clause simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations." *Id.*

Nor would it help to pivot to the second error, as we did in *Ervin*, and adopt the view that a housing authority violates "procedural due process rights under the Fourteenth Amendment" when it "fail[s] to comply with" federal "regulations governing benefits termination procedures." 281 Fed. App'x at 939. This rationale is an application of a theory that we have repeatedly rejected, namely, that an agency violates due process if it fails to abide by its own procedural regulations in an administrative adjudication. *See ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1229 (11th Cir. 2009) (The doctrine "that 'an agency must follow its own rules in order to avoid infringing due process rights,' cannot be grounded in the law of this circuit.") (citation omitted); *Smith v. Georgia*, 684 F.2d

19

729, 732 n.6 (11th Cir. 1982). Under our precedents, an agency's failure to follow its own procedural regulations gives rise to a due process violation only if the procedures the agency actually applied in lieu of those required by its regulations failed to provide what the Due Process Clause itself requires: "notice and an opportunity to be heard." *ACLU of Fla.*, 557 F.3d at 1229. So the theory we floated in *Ervin* could support our holding in *Basco* only if rendering an adverse determination in a welfare hearing based on insufficient evidence is itself a violation of procedural due process. This idea, of course, is the same one we proposed in *Lane*. So at bottom, the theory we outlined in *Ervin* reduces to a variant of the theory proposed in *Lane*. It fails for the same reason: there is no procedural-due-process right to error-free adjudication.

There is another potential constitutional foundation for *Basco* that we have not considered in our decisions—substantive due process—but it is a nonstarter. Under that doctrine, "the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition.'" *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (quoting *Moore v. City of East Cleveland*, 431 U.S. 494, 503 (1977) (plurality opinion)). But the Supreme Court has made clear that "[w]elfare benefits are not a fundamental right, and neither the State nor Federal Government is under any sort of constitutional obligation to guarantee minimum levels of support." *Lavine v.*

20

*Milne*, 424 U.S. 577, 584 n.9 (1976). So there is no sense in which the substantive protections of the Due Process Clause can guard a welfare recipient from termination based on erroneous application of the requisite standard of proof.

In short, not one of the potential constitutional rationales for our holding in *Basco* is at all plausible. The failure of our attempts to find a secure footing for *Basco* in the text of the Housing Act and principles of due process suggests that in the final analysis, our decision in that appeal was lawless. Undoubtedly, an injustice is done when a housing authority terminates the benefits of a deserving claimant on the basis of manifestly inadequate evidence. But in the absence of a congressional decision to confer an individual entitlement to a termination decision based on legally sufficient evidence, the correction of the garden-variety mistakes of local housing authorities is not within our authority. There is no constitutional principle that secures a person against the risk that he will be deprived of a benefit based on an erroneous factual determination. A claim alleging that a deprivation of a protected property interest was not proven to the legally-mandated standard of proof is quintessentially substantive, not procedural, and there is no fundamental right to receive welfare benefits that could ground a substantive-due-process challenge to such an administrative decision.

We should clean up our jurisprudence in this area because it cannot be squared with the Supreme Court's precedent or our own. We should stop

21

entertaining complaints by recipients of welfare benefits who have no cause of action under section 1983. Instead, we should overrule our decision in *Basco* en banc.